BROWN, Administrator, Appellant, vs. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Respondent.

*February 9 — February 26, 1901.*

*Railroads: Injury to person at street crossing: Contributory negligence: Failure to look and listen: Unlawful speed: Constructive intent to injure.*

1. If a person approaches a railway track to cross or enter upon it, ordinary care, as a matter of law, requires him, before doing so, to look and listen for a coming train, and, if there is one in plain sight or hearing, so circumstanced as to suggest reasonable probability of danger for such person to proceed, to discover such situation and not to go upon the track till the danger is past.

2. The rule above stated is absolute, so that a person about to enter upon a railway track is chargeable with knowledge of such dangers as he may reasonably discover by the use of his sense of sight and that of hearing. Neither violation of statutory regulations on the part of the railway company as regards the speed of its trains or signaling the approach thereof, nor any other negligent act on its part, nor mere diversion of attention on the part of the injured person, will excuse him from the performance of his duty to care for his own safety.

3. Failure on the part of a railway company to comply with statutory regulations as to the speed of its trains in running through a village, or failure to signal the approach thereof to a street or highway crossing, as the law requires, is negligence *per se,* but not

Brown vs. Chicago & Northwestern R. Co.

necessarily actionable negligence at the suit of one injured by such a train.

4. In the circumstances last above stated, the mere unlawful act does not constitute actionable negligence unless the injury be proximately caused thereby, without want of ordinary care on the part of the injured person, contributing thereto.

5. The mere intentional running of a railway train contrary to police regulations, designed to promote the safety of persons in crossing the track, does not constitute actual or constructive intent to inflict an injury upon such a person, so that if he is injured thereby he may recover compensation therefor regardless of his own contributory negligence.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Action to recover compensation for loss sustained by plaintiff's intestate, August Zilmer, through the alleged wrongful conduct of defendant's servants in running one of its passenger trains in the nighttime at an unlawful rate of speed across a public street in Deerfield, in Dane county, Wisconsin, a duly organized village of such county, without giving any signal of its approach to such crossing by sounding the engine bell or whistle, whereby the intestate, while attempting in the exercise of ordinary care, as claimed, to pass over the crossing, driving a single horse hitched to a light wagon, was injured so severely as to cause his death within a short time after the injury was received. The controverted issues on the pleadings were, mainly, whether defendant's servants were guilty of wrongful conduct causing the injury to Zilmer, if so guilty the degree of such guilt,— as to whether it was mere negligence or wilful misconduct,— and whether deceased was guilty of a want of ordinary care that contributed to the fatal result. On the trial the following appeared to be undisputed facts:

The place where the accident occurred was on one of the principal streets of the village of Deerfield. The time of

the accident was about 10 o'clock p. m. on the 29th day of August, 1895. Zilmer was a farm hand. He had driven into the village with several young girls as companions, in the early part of the evening. About 10 o'clock thereafter he started to return home with his party. The place of starting was from ten to twenty rods from where the accident occurred. The night was clear and not very dark, though there was no moonlight. About as the start was made, the train that caused the accident signaled its approach to the depot, which was near where the accident occurred, by sounding the engine whistle. Such signal was heard by many persons circumstanced no more favorably for that purpose than Zilmer. The train was a regular passenger train, due according to schedule time to pass through the village without stopping, at about the time Zilmer started on his way home. He was well acquainted with the situation of the railway tracks at the point where he was injured. From the place where he started as before stated, till he received his injury, according to all the direct evidence, he drove his horse on a slow trot without making any effort whatever to inform himself as to the approach of a train. As his horse was about to step upon the main track it was struck by the train, which was coming from the east, moving at from twenty to forty miles an hour, and he was fatally injured. The street crossed the railway track at about right angles. From the point where deceased started, to the region of the railway right of way, it was a little down grade. Zilmer's starting point was south of the railway crossing. There were three tracks. The first one reached was a side-track, located about fifty-two feet from the main track. About midway between such side-track and the main track was a second side-track. From the point where the traveled roadway crossed the first side-track, a person could see an approaching train from the east, on the main track, for a distance of about 630 feet. As

the train that did the injury approached, it made sufficient noise to attract the attention of persons within a radius of several hundred feet from the crossing. There was no opportunity, for one circumstanced as Zilmer was, to see the approaching train till he arrived at a point on or just over the first side-track. From that point on, until the main track was reached, a person looking east along the main track could see a coming train after it reached a point about 630 feet from the crossing. For that distance there was nothing to obstruct the view. Three young men were approaching the crossing a little ahead of Zilmer. All of them heard the engine whistle for the station, and the noise of the train a little before it came into sight, and, being on their guard against injury by it, they stopped before reaching the main track to allow it to pass. After they crossed the first side-track and were in the vicinity of the second, they observed the coming train. Zilmer was then just crossing the first side-track. They observed him at that instant, driving towards the main track, apparently regardless of the danger, and called out to acquaint him of the presence thereof. Some person from across the track also called a warning to Zilmer. He did not appear to notice any of the warnings. When nearly opposite the young men, one of them stepped towards the horse and called out "Whoa," but it was then too late to stop it. If Zilmer observed the train at all it was for only an instant before the collision. The appearances were that he was entirely unconscious of the danger till the accident occurred.

There was evidence tending to show that the 10:06 p. m. train customarily passed through the village at an unlawful rate of speed, and that there were no rules promulgated by the defendant inconsistent therewith. Also that if a train were moving at a rate of forty miles an hour there would not be sufficient time to stop it from the instant of its reaching a point where a person in the engine cab could observe

the track and the vicinity thereof up to the crossing to the instant when the accident occurred. There was some conflict of evidence as to whether the engine bell was sounded as the train approached the crossing.

The following is in substance the testimony of the three young men before mentioned: William Kroneman said: 'I heard the 10:06 p. m. train whistle just as we crossed the second side-track. We saw the train coming around the curve. At that instant I saw Zilmer coming back of us, and heard Quammen and Howe of our party call to him. The rig was then on the south side-track, coming at the rate of about six miles an hour. Zilmer did not appear to hear the warning my companions gave to him. He did not slacken the speed of his horse. The horse was trotting when I first observed him, and continued to trot right up to the instant the accident occurred.' Frank Howe said: 'I heard the whistle when I was at the south side-track. We saw the train coming when we were at the middle track, the second side-track. When we were a little further I saw Zilmer crossing the first side-track and I hollered at him. He did not appear to hear me, but allowed his horse to trot right up to the point where the collision occurred.' Herman Kruger said: 'I heard the noise of the train when I was a little way over the first side-track. I did not cross the main track till the train passed. At the time I heard the train Zilmer was coming about a rod and a half behind me. When the rays of the headlight showed on the rails of the main track at the crossing, Zilmer was still about a rod behind me and not quite clear of the first side-track. As the horse got about opposite me I took about three steps toward him and said "Whoa." There was not then time for me to stop the horse, so I stopped myself. The horse kept right on trotting up to the main track where he was struck by the train.' All the other direct evidence corroborated the three witnesses whose testimony has been given.

At the close of the evidence the court granted a motion for a nonsuit upon the ground that the evidence showed conclusively that Zilmer was guilty of contributory negligence. Judgment was thereafter rendered dismissing the complaint and for costs in favor of defendant.

For the appellant there were briefs by *Bushnell, Rogers & Hall,* and oral argument by *A. R. Bushnell.*

*Edward M. Hyzer,* for the respondent.

MARSHALL, J.  Counsel contend that the evidence does not show contributory negligence as a matter of law.  We shall not take time to follow the learned counsel in their ingenious reasoning on that point.  The evidence is perfectly clear that the deceased had ample opportunity to discover the danger which resulted fatally to him, and that he drove his horse recklessly into it.  He did not make any attempt to discover the coming train, though it must have been in sight when he was at least forty feet from the crossing. The evidence shows one of the most reckless attempts to cross a railway track, regardless of the danger which it in law and in fact suggests, that can be found in the books.

It is further contended that contributory negligence was not a defense, because the train that did the injury was running at an unlawful rate of speed and according to a custom of its servants known to and approved by it.  It is argued that the injury to deceased, under the circumstances, should be considered as having been wilfully inflicted by defendant.  What constitutes a wilful injury has been so recently fully discussed in this court that we do not feel justified in going over the subject at this time. *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333.  There is no evidence here that the defendant saw the deceased in a place of peril and purposely or recklessly ran the train regardless thereof, nor that the train was operated with such an utter disregard of the safety of persons using the high-

way as to indicate a willingness to injure them. The evidence shows merely that the speed of the train was in excess of that allowed by law. That comes far short of showing actual or constructive intent to injure. The act was negligence *per se* (Elliott, R. R. § 1095, note 1; *Smith v. Milwaukee B. & T. Exchange*, 91 Wis. 360), but not necessarily actionable negligence. To constitute an actionable wrong, the conduct must be the proximate cause of an injury, without any want of ordinary care on the part of the injured person contributing thereto. There are a large number of cases in the books involving injuries to persons by railroad trains while being operated contrary to law, and it will be found that such a circumstance is uniformly held to be evidence of negligence, not of intent, actual or constructive, to injure. Elliott, R. R. § 1204; *White v. C. & N. W. R. Co.* 102 Wis. 489; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378. In the latter case, the point upon which appellant's counsel mainly rely here was urged upon the attention of the court, viz., that where a person is injured by the act of another that is prohibited by statute, the latter is liable to the former for the resulting damages regardless of the question of contributory negligence. The unlawful act involved was that of running a railway train contrary to statutory regulations. The court decided that the legal restraint put upon a railroad company, as regards the running of its trains, does not relieve a traveler upon the public ways from the duty to use ordinary care for his own safety; that such restraint goes no further than to render the company refusing or neglecting to submit to it liable to the penalty imposed, and to the charge of negligence as a matter of law in a civil action, leaving a person injured by reason of such negligence remediless the same as in any other case of negligence if he contributes to his injury by his own want of ordinary care. It seems that we need not say more in this case.

*By the Court.*— The judgment is affirmed.