O'TOOLE, Respondent, vs. DULUTH, SOUTH SHORE & ATLAN-
TIC RAILWAY COMPANY, Appellant.

*February 18—May 14, 1913.*

*Railroads: Injury to person at highway crossing: Contributory negli-
gence: Failure to look and listen: "Slight want of ordinary
care:" Questions for jury.*

While crossing railway tracks on a highway, plaintiff's cart was
struck by an engine and he was injured. He had dumped a
load at a point about ninety feet away, and before starting
back toward the crossing had looked down the track, along
which he could see 500 or 600 feet in the direction from which
the engine came, but saw nothing. He knew that a passenger
train was due at that time. He then drove along a road par-
allel with the tracks and did not look again for a train until he
had turned and was upon the crossing. He wore a cap which
covered his ears, and did not hear a fellow workman who saw
the engine and called to him to stop. *Held* that, as a matter
of law, he was guilty of more than a "slight want of ordinary
care" contributing to the injury, within the meaning of sub. 6,
sec. 1809, Stats. (Laws of 1909, ch. 332), and that a recovery
was barred. TIMLIN, J., WINSLOW, C. J., and KERWIN, J., dis-
sent.

APPEAL from a judgment of the circuit court for Bayfield
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries
suffered by the plaintiff while crossing the defendant's rail-
way tracks on a highway in the unincorporated village of
Iron River in Bayfield county.

On March 2, 1911, the plaintiff started work for the Iron
River Lumber Company, hauling wood with a team and
dump-cart from the mill of the company to the wood-yard.
The mill was located on the east side of defendant's tracks,
about 600 feet from the crossing, and the wood-yard where
the loads were dumped was about 100 feet beyond the cross-
ing, on the other side of the tracks and a short distance there-
from. About 8 o'clock on the morning of March 4th the
plaintiff had taken a load of wood from the mill across the

tracks to the wood-yard, and, after having turned the team around so that they were headed toward the crossing, he stopped his team and dumped his load. He testified that when about ninety feet from the crossing, before starting his team, he looked down the track, along which he could see at least 600 feet, and saw no train or engine in sight. He then proceeded toward the crossing, along the road, which for some distance before reaching the crossing was parallel to the tracks, and, when he had gotten upon the crossing and it was too late to turn the team or stop it, he saw an engine coming toward the crossing and only a short distance from him. He whipped up his team in an attempt to get across the tracks. He was not successful, and the back end of the cart was struck by the engine, the plaintiff was thrown from the cart between the horses and the cart, and sustained the injuries for which he seeks damages.

There was conflicting evidence as to whether or not the whistle and bell were sounded and as to the speed of the engine. A fellow workman of the plaintiff saw the engine coming and called to the plaintiff to stop, but he was unable to make himself heard by the plaintiff. There was a dispute as to whether or not the crossing was a public highway. It was in evidence that the plaintiff did not look for a train or engine coming on this track, from the time he started his team after having dumped his load of wood until he had driven onto it. The engine was coming down grade with the steam shut off from the engine, and under such conditions the engine makes but little noise. The plaintiff knew that a passenger train was due at the time of the accident.

The jury found that the crossing was a public highway; that the engine was being run at an excessive speed; that the whistle was not sounded and the bell was not rung so as to give warning to travelers on the crossing; that there was a want of ordinary care on the part of the defendant in running the engine at the speed it did and in failing to give warning

to travelers; that this failure to exercise ordinary care was the proximate cause of the accident; that the plaintiff was guilty of a want of ordinary care in failing to look and listen before driving onto the crossing; and that the plaintiff's conduct in approaching and driving onto the track constituted no more than a slight want of ordinary care which proximately contributed to produce his injuries.

This is an appeal from the judgment awarding the plaintiff $1,000 as his damages, and his costs.

For the appellant there was a brief by *C. F. Morris,* attorney, and *A. E. Miller,* of counsel, and a reply brief signed by *A. B. Eldredge,* of counsel, and the cause was argued orally by *Mr. Eldredge.*

For the respondent there was a brief by *Ernest Sauve* and *A. W. McLeod,* and oral argument by *Mr. McLeod.*

The following opinion was filed March 11, 1913:

SIEBECKER, J.　The jury found that the defendant was guilty of negligence in failing to give warning of the approach of its engine to the grade crossing, over the highway in question; that such negligence was the proximate cause of plaintiff's injuries; and that plaintiff's omission to look and listen for an approaching locomotive, when he should have done so, was, under the circumstances and conditions, a want of ordinary care which proximately contributed to cause him the injuries complained of, but that this culpability on his part was no more than a slight want of ordinary care. The court held that the plaintiff was entitled to judgment on the verdict for the recovery of the damages found by the jury.

The appellant assails the judgment on the ground, among others, that the evidence shows as matter of law that plaintiff, in omitting to look and listen for trains and engines while driving toward and onto the crossing, when one of defendant's engines, running light, was approaching it, was guilty of more than a slight want of ordinary care. The facts show-

ing the conditions surrounding this· crossing, plaintiff's rela-
tion thereto, and his conduct in approaching and driving onto
it, are practically undisputed.   There is no room for con-
troversy concerning plaintiff's ability to see and hear the en-
gine approaching the crossing while he was driving on the
road, which is about fifteen feet from and parallel to the rail-
road track, for the distance of ninety feet before he turned to
cross the track.   Plaintiff testified that before starting his
team he looked and listened for trains at the place he dumped
his load, which was a point ninety feet from the crossing;
that he did not hear or see a train within his field of observa-
tion, which extended about 500 feet along the railroad track
in the direction from which the engine that struck him came;
that from the time he started on his course of travel from
this point he did not again look for an approaching train or
locomotive; that he heard or saw none until he had turned in
his course and his horses' front feet were on the track, when
he heard and observed this engine about 200 feet away; and
that he then made his best efforts to cross and clear the track
before the approaching engine should reach him.   He admits
that nothing at any time obstructed his view from seeing this
engine at a point from· 500 to 600 feet distant, after he
dumped his load, to the time he drove onto the track; and that
he did not look or listen for an approaching train or engine.
It also appears that the accident occurred on a cold winter
morning; that plaintiff wore a cap, which, he states, covered
his ears; and that another driver followed him with a team
at some distance and observed the approaching engine and be-
fore the plaintiff drove onto the track tried to warn him of
its approach by "hollering" to him, but did not succeed.

Under the provisions of ch. 332, Laws of 1909, can it be
said that such contributory negligence of the plaintiff, proxi-
mately causing his injuries, was a "slight want of ordinary
care"?   It must be considered that the language employed in
this act was used in its ordinary and usual legal sense, and

that the words, a "slight want of ordinary care," mean that degree of care to which the terms are applied in the laws and decisions of the courts of this state. Viewing the plaintiff's conduct, in driving onto the railroad track as he did, in the light of the established adjudications on the subject, we are led to the conclusion that it shows, as matter of law, negligence of a higher degree than a "slight want of ordinary care." In *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255, 37 N. W, 414, 40 N. W. 616, conduct of this nature was involved, and the court speaks of it as follows:

"Can we say that an ordinarily prudent man, with the same knowledge of the time when the train was due, and having lived so near the railroad at that place so long a time, would not have looked or listened before crossing the track? He took no precaution, and used no means whatever, to avoid the danger. *He used no care and exercised no prudence whatever.* [Italics ours.] He might as well have been blind and deaf."

*Dohr v. Wis. Cent. R. Co.* 144 Wis. 545, 129 N. W. 252.

In *Brown v. C. & N. W. R. Co.* 109 Wis. 384, 85 N. W. 271, where the plaintiff drove his horse and buggy into the danger of an approaching train, a similar case was presented to the court. The court said:

"The evidence is perfectly clear that the deceased had ample opportunity to discover the danger which resulted fatally to him, and that he drove his horse recklessly into it. He did not make any attempt to discover the coming train, though it must have been in sight when he was at least forty feet from the crossing. The evidence shows one of the most reckless attempts to cross a railway track, regardless of the danger which it in law and in fact suggests, that can be found in the books."

In *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295, the court adverts to the negligent character of the conduct of a person in failing to look and listen for trains before attempting to pass over grade crossings, and holds it to be

inexcusable as matter of law. It is well established by the foregoing and many other adjudications on the subject, which need not be enumerated here, that the plaintiff's culpability, under the undisputed facts, is so obvious that it must be ruled as a question of law that he was guilty of a want of ordinary care which exceeds in culpability a "slight want of ordinary care," and in its magnitude and gravity, when viewed in the light of the impending perils of approaching trains and engines at such crossings, approaches the point of no care and of reckless conduct. It is suggested by respondent that the rights of the parties are controlled by sec. 1809, Stats. (1898), as amended by ch. 653, Laws of 1911. The accident happened on March 4, 1911. This statute went into effect the following July 13, 1911. The rights of the parties were fixed before the passage of this law, and hence are not affected by its provisions. See *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102. We are constrained to hold that the jury's finding, that plaintiff was guilty of a "slight want of ordinary care," is not in accord with the undisputed evidence; that the evidence, as matter of law, establishes a higher degree of culpability than a "slight want of ordinary care;" and that the court erred in awarding the plaintiff judgment in the case.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to dismiss the complaint.

TIMLIN, J. (*dissenting*). By ch. 332, Laws of 1909, it was provided that in actions for death or personal injuries caused by the negligent omission of a railroad company to comply with the requirements of sec. 1809, the fact that the person injured or killed was guilty of a slight want of ordinary care contributing to the injury or death should not bar a recovery. "The burden of proof that the person so injured

or killed was guilty of more than slight want of ordinary care contributing to the injury or death shall be upon the railroad company or corporation operating such railroad."

This statute was passed after more than half a century's experience in deciding such cases under rules of contributory negligence established and upheld by the court. It is apparent that such rules were not satisfactory and did not promote the cause of justice as justice is now understood. Therefore the proper legal representatives of the people of this commonwealth undertook, as they lawfully might, to change the law as it formerly existed. I think it was our duty to recognize this change in the instant case, which is governed by the statute referred to. I think it was error to reverse the verdict of the jury in the instant case on the question of fact involved and pronounce as matter of law upon the degree of want of ordinary care exhibited by the plaintiff in approaching and crossing the railroad track. Especially is this true where the burden of proof is by statute quoted upon the defendant. This statute could be given a just and equitable construction so as to soften the rigor of the ancient law and protect the railroad companies. I regret that this was not done. An intelligent recognition of the fact that the legislature has the right to make such changes and that the old decisions of this court on such questions did not satisfy the present-day notion of right and justice would go far to increase confidence in the courts. Whether or not there is shown on the part of the plaintiff a lack of ordinary care contributing proximately to cause his injuries is fundamentally a question of fact. Certain artificial rules relative to railway crossing accidents were established by the courts at an early day in response to the demands of justice as it was then understood and in vindication of a derivative common law governing the case. These were well enough so long as accepted and acquiesced in, but when the legislature undertakes to change

the law and does so moderately, I think it is the duty of this court to accept the change cheerfully and with alacrity so long as this change is within the power of the legislature.

Since the injury in question the law has been changed again by ch. 653, Laws of 1911, so that nothing short of gross negligence on the part of the person injured shall bar a recovery, and the burden of proof to show that the person injured or killed was guilty of gross negligence contributing to the injury or death is cast upon the railroad company.    I am afraid it will be very hard to administer the law justly under this latter statute, but what can the legislature do when its moderate efforts to make a change in the interest of justice are disregarded?

Assuming that this locomotive engine was traveling at the rate of twelve miles an hour and that it omitted the statutory signals, a mere lack of attention for half a minute before entering on the track would bring about the collision.    The locomotive was not in sight for more than half a minute before it struck the plaintiff.    The plaintiff was negligent as found by the jury, but it is purely a question of fact whether or not such negligence exceeded a slight want of ordinary care, and that question should not be determined by considering the adjectives used twenty or thirty years ago in writing the opinions of this court.

Believing that an injustice has been done to the plaintiff and an unwarrantable interference with the verdict indulged in, I respectfully dissent from the majority opinion.

Chief Justice WINSLOW and Mr. Justice KERWIN concur in this dissent.

A motion for a rehearing was denied, with $25 costs, on May 14, 1913.