Depouw, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*October 9—October 28, 1913.*

*Railroads: Negligence: Train blocking street crossing at night: Injury to traveler: Contributory negligence: Evidence: Questions for jury: Adverse witness: Examination: Impeachment: Appeal: Prejudicial errors: Law of the case: Damages.*

1. In an action for personal injuries caused by plaintiff's team, on a dark night, running against a train of flat cars which had stood for some time blocking an unlighted crossing of one of the principal streets in a city, the substantial question for submission to the jury upon the evidence is *held* to be, "Was it negligence to allow the train to stand on the crossing for the length of time it did, without a watchman?" rather than the question of whether or not the crossing was blocked an unreasonable length of time.

2. Evidence tending to show that the train had stood upon the crossing from five to eight minutes, with no one to warn approaching travelers, is *held* sufficient to warrant a finding of negligence on the part of the railway company.

3. Plaintiff's testimony that, with a team which had been standing out for some time on a cold night and which trotted at least part of the way, it took him from five to six minutes to travel one third of a mile to the railroad track, while it seems improbable, is *held* not so inherently incredible as to be unworthy of belief and to raise no jury question.

4. Where plaintiff's team, on a dark night, ran against a train of flat cars which stood blocking an unlighted street crossing, the fact that, after stopping to look and listen at a point 200 feet from the track and perceiving no sign of a train, he drove on to the crossing without again stopping or looking up or down the track, is not conclusive of contributory negligence on his part. VINJE and MARSHALL, JJ., dissent.

5. The fact that plaintiff was thrown violently from his sleigh does not conclusively show that he was driving at a reckless rate of speed.

6. Where plaintiff's attorneys called, as an adverse witness under sec. 4068, Stats., an employee of the defendant who had testified on a former trial, and asked him a question knowing what his answer would be, and then offered themselves as witnesses and were permitted to testify that said employee had made a contradictory statement to them before the first trial—the purpose being to use such alleged unsworn statement, not by way of impeachment, but as independent evidence of the fact involved,—it is *held* that this was an abuse and perversion of the statute; and, the alleged statement having a direct bearing upon a pivotal question in the case, the error was a prejudicial one.

7. An award of $9,500 for personal injuries having been declared by this court on a former appeal to be at least double what it should have been, an award of $7,500 upon a second trial, with no new evidence to warrant a larger recovery, cannot be sustained.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Reversed.*

Action for personal injuries. The jury returned the following special verdict:

"(1) Is the condition of plaintiff's heart the result of the collision, on March 4, 1910, by his team, which he was driving, colliding with a flat car left by the defendant standing on its track across one of the highways in the city of Oconto? *A.* Yes.

"(2) Was the defendant negligent in permitting said car to be standing across said highway as it was at the time of the said collision? A. Yes.

"(3) If your answer to the second question should be 'Yes,' then answer this: Was such negligence the proximate cause of plaintiff's injury? A. Yes.

"(4) Did any want of ordinary care on the part of the plaintiff contribute to his injury? A. No.

"(5) What amount of money will compensate the plaintiff for his said injury? A. $7,500."

From the judgment entered upon such verdict in favor of plaintiff the defendant appeals.

*Edward M. Smart,* for the appellant.

For the respondent there was a brief by *Classon & O'Kelliher,* and oral argument by *D. G. Classon.*

BARNES, J. This case was before this court on a former appeal and is reported in 151 Wis. 109, 138 N. W. 42. The main facts are quite fully stated in the opinion on that appeal and need not be reiterated here.

A large number of errors are assigned, and, inasmuch as there must be a new trial ordered, we shall discuss such of the questions raised as may be of assistance in disposing of the case on a subsequent trial. The appellant urges, with much earnestness and force, that no negligence on the part of the railway company was shown and that it should be held as a matter of law that plaintiff was guilty of contributory negligence. It must be admitted that both of these questions are close,—so close that had the trial court resolved them against the respondent we might hesitate to disturb its conclusion. The court has not done so, however, and a majority of the members of this court are of the opinion that there was some evidence to go to the jury on both questions which would warrant a verdict favorable to the respondent.

The acts of negligence relied on were: (1) Permitting the

train to stand on the highway crossing in the first instance, and (2) allowing it to remain there an unreasonable length of time without providing a man at the crossing to keep a lookout and to warn travelers not to attempt to cross.

There was no evidence in the case which tended to show negligence in bringing the train to a standstill on the crossing. In reference to the time which the train was permitted to block the crossing, the testimony of defendant's witnesses was to the effect that it did not exceed two minutes, and that offered on behalf of the plaintiff tended to show that the time was from five to eight minutes. In each instance the time was estimated. No witness claims to have actually observed the time when the train arrived and when the accident took place. The evidence on the part of the defendant is to the effect that the switchman jumped from the engine and went about 150 feet to ascertain what track might be utilized and had just started to return when the accident occurred, and that the time that elapsed did not exceed a couple of minutes. The plaintiff testified that no engine crossed the tracks after he left a certain church one third of a mile distant therefrom and that the time consumed in traveling this distance was five or six minutes. He also testified that he made one stop about 200 feet from the track and that his horses trotted part of the way, how much does not appear. The team had been standing outside for some time and it was a medium cold night. The accident occurred on the night of March 4th, about 9:30. While it seems improbable, all things considered, that it took the plaintiff the length of time he says it did to travel one third of a mile, it cannot be said that the evidence is so inherently incredible as to be unworthy of belief and to raise no jury question. If the jury reached the conclusion that the crossing was blocked with a string of empty freight cars as long as the plaintiff's evidence would tend to show that it was, then we think the

jury would be justified in finding under the circumstances that defendant was negligent in allowing the blockade to exist for such length of time without stationing some one at the crossing to warn approaching travelers. Considerable switching operations seem to have been carried on over this crossing. The night was dark and the street was one of the principal thoroughfares of the city of Oconto, although the crossing was some distance from the business portion of the town. Flat cars are low and it is difficult to see their outline in the darkness. That it was difficult to see them on the occasion in question is evident from the fact that the horses ran into them.

On the contributory negligence of the plaintiff it is argued that he was familiar with the crossing and knew that switching operations were carried on over it, and that before venturing to cross he should have stopped and ascertained whether or not it was clear, and furthermore that the inference is irresistible that he was trying to pass over at a reckless rate of speed. There is no direct evidence to support this latter contention, but it is said that the violence with which plaintiff was thrown would indicate that the cars were struck by the team with much force. We are not prepared to say that a team of horses running against an unexpected barrier might not suddenly back up or lurch sidewise in such a manner as to produce the results testified to. According to the plaintiff's evidence he was going at a moderate rate of speed. Accepting the evidence of plaintiff as being true, no train had passed over the crossing for more than five minutes before the collision. When he reached a point about 200 feet east of the crossing he stopped his team and looked and listened. He could see no train in front of him, nor hear any moving or approaching the crossing. The danger he was anticipating evidently was that a train might be approaching the crossing from the north or south, and not the possibility of the crossing being blocked with a string of flat cars since

before he left the church.   The test of ordinary care is, What would ordinarily careful and prudent persons do under the same or similar circumstances?   He had apparently, though mistakenly, satisfied himself that the crossing was clear and that the only danger he had to apprehend was from moving trains, and he was on the lookout for them.   Under these circumstances the question of contributory negligence was for the jury.   The case is not similar in its facts to *O'Toole v. D., S. S. & A. R. Co.* 153 Wis. 461, 140 N. W. 293.   There the plaintiff looked as he approached the track, then he followed the road which paralleled the track for some distance and then crossed over without again looking, and was struck by a moving engine.   The fact that the plaintiff did not see an engine when he first looked was no particular reason why one might not be approaching the crossing when he attempted to go over it.   Had plaintiff in the present case been struck by a moving train, he might well be held guilty of negligence as a matter of law, if the injury was due to his failure to stop and look and listen again before he entered the realm of danger.   But the night was crisp and the noise of an approaching train easily discernible, and plaintiff evidently satisfied himself without stopping again that no train was moving.   Furthermore, it cannot be said as a matter of law that the failure to stop and look a second time before attempting to cross the tracks was the proximate cause of the injury.   The night was dark and the ground bare and black at the crossing, and the horses actually ran against the cars, and the jury might well find that had the plaintiff again stopped before attempting to pass over the first set of rails and looked he could not have seen the empty cars.   The first tracks crossed were some little distance from the ones on which the cars were standing.

On the first trial of the action the plaintiff called one Motis, an employee of the defendant company, as a witness, and he testified that the train had stopped on the crossing

only two minutes when the accident occurred.   He was called
as an adverse witness under sec. 4068, Stats., on the second
trial, and plaintiff's counsel, knowing that he would give the
same testimony, examined him in reference to the matter.
He testified as on the first trial and denied that he had made
any different statement to the attorneys.   The attorneys then
offered themselves as witnesses, and were permitted to testify
that they had a conversation in their office with the witness
before the first trial and that in such conversation he stated
that the train had been standing on the track from five to
eight minutes when the accident occurred.   This we think
was clearly an attempt to get incompetent testimony before
the jury to prove a substantive fact embodied in a statement
not made under oath.   The respondent's counsel attempt to
justify this action under sec. 4068, which gave them the right
to examine the witness as if under cross-examination without
being concluded by his answers.   We think counsel and the
court misconceived the effect of the statute.   There was no
surprise.   The witness was not called by the defendant.
The purpose was not to impeach him, but to use his alleged
unsworn statement as independent evidence to support the
claim that the train remained on the crossing for more than
five minutes.   The case was no doubt argued to the jury on
this basis.   Indeed, counsel in their brief in this court urge
that there is sufficient evidence to support a finding of negli-
gence for the reason, among other things, that "there is the
evidence of James Motis, the car repairer, who stated to one
witness that the train stood on the crossing from five to eight
minutes."   Of course in any case where a witness is im-
peached by showing that he made contradictory statements
out of court, there is the possibility that some weight may
be given to such statements as substantive evidence by a jury,
although such is not the purpose of legitimate impeaching
evidence.   But it would be a perversion of the statute and of
the rule which permits contradictory statements to be shown

for the purpose of impeachment to hold that a witness may be asked a question where counsel know what the answer will be, for the sole purpose of getting the unsworn statement before the jury to the end that it may be treated as evidence of the existence of the fact.

Neither do we see how the error can be treated as non-prejudicial. There was a decided preponderance of the evidence in favor of defendant's contention that the train had not stopped to exceed two minutes when the accident occurred. This was a pivotal question in the case. If defendant's evidence was true, there could be no recovery in the action. We must assume that a jury impaneled to try such a case will do it honestly and fairly, and it is very probable that the evidence of this statement from an employee of the defendant would have great weight. A jury might well reason that the statement out of court expressed the truth and that the change was made at the behest of the employer. Any such suspicion would be necessarily fatal to the defendant's case. For this error the judgment must be reversed.

On the former trial the damages were assessed at $9,500, and it was said in the opinion on appeal that such award was at least double what it should have been. On the second trial $7,500 damages were assessed, and judgment was accordingly entered. It is attempted to justify the last assessment on the ground that additional evidence was produced on the second trial which warranted a greater allowance than would be permissible under the evidence on the first trial. We do not think that any additional evidence was produced on the last trial which would warrant any recovery in excess of the sum indicated in the former opinion.

Appellant urges that separate questions should have been propounded to the jury covering the following items of negligence, if plaintiff relied on them and there was any evidence to support them: (a) Failure to stop the train north of the crossing; (b) permitting the train to stand for an un-

necessary length of time on the crossing; (c) failure to station one of the crew at the crossing for the purpose of giving warning; and (d) failure of the agents and servants of the defendant, aside from the train crew, to provide a person to give warning.

As already stated, there was no evidence to support the claim of negligence for failure to stop the train north of the crossing. Aside from this, the question would seem to be whether the train was permitted to stand on the crossing for an unreasonable length of time without placing some member of the crew at the crossing for the purpose of warning travelers. If it be conceded that the train remained on the crossing for five or six minutes before the accident, there is little if any evidence to show that the stop was unnecessarily lengthy, but the evidence does show that the switchman had not yet returned to the engine and that the train was not ready to pull out when the collision took place. As we view it, the substantial question in the case on the evidence offered is, Was it negligence to allow the train to stand on the crossing the length of time which it did without a watchman? rather than the question of whether or not the crossing was in fact blocked an unreasonable length of time.

*By the Court.*—Judgment reversed and a new trial ordered.

VINJE, J. (*dissenting*). To my mind the evidence shows the plaintiff was guilty of contributory negligence as a matter of law in failing to look either north or south, or ahead, after having looked when he was 200 feet from the crossing, and when he saw the light of what he thought was an engine behind the shed that obstructed his view. Had he looked to the south at any time within sixty feet of the crossing he could have seen the engine standing only seventy-five feet away and headed south, with the headlight and blizzard lights burning. He himself says if he had so seen the engine

he would have supposed cars were behind it. The fact that the accident happened in a way not anticipated does not affect plaintiff's duty to look when approaching such a place of danger as a grade railway crossing. The darkness only emphasized the need of looking, and of seeing that which could be seen. No one can be said to have exercised ordinary care, within the rule repeatedly declared by this court, who fails to look when approaching a grade railway crossing where looking would materially add to his safety. Under such circumstances the duty to look is imperative, and juries should not be permitted to nullify it. The case falls within the decisions of *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *O'Toole v. D., S. S. & A. R. Co.* 153 Wis. 461, 140 N. W. 293; and *Hains v. Johnson, post,* p. 648, 143 N. W. 653.

MARSHALL, J. I concur in the opinion of VINJE, J.