DAX, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

*December 10, 1924—January 13, 1925.*

*Railroads: Accidents at grade crossings: Contributory negligence.*

> Where a pedestrian had a continuous unobstructed view of a
> railroad track for several miles from a distance of fifteen feet
> from the track, and her attention was not diverted by any
> cause, and the jury found she was guilty of a want of ordi-
> nary care which must have consisted in a failure to look or
> listen, or to do both, such failure amounted, as a matter of
> law, to more than a slight want of ordinary care and pre-
> cluded recovery for her death. CROWNHART, J., dissents.
> p. 433.

APPEAL from a judgment of the county court of Iowa
county: ALDRO JENKS, Judge. *Reversed.*

Action to recover damages for the death of plaintiff's
wife caused by being struck by one of defendant's trains in
the village of Avoca.

On the evening of October 19, 1922, at about half-past
six, the plaintiff's wife started to walk from her home to
some place south of defendant's tracks along Second street,
which is crossed by three of its tracks. The first track
reached by her was the passing track, and about fifteen feet
further on she reached the main track, on which she was
struck by a freight train of twenty-nine cars coming from
the west and instantly killed. A house track left the main
track close to where Mrs. Dax was struck. The Dax home
was about 110 feet north of the tracks and on the west side
of Second street. There is a little dispute as to just how
unobstructed her view was to the west from her house to
near the right of way. The ground was practically level for
several miles to the west, and the only obstruction of any
consequence to a view was a small building about fifty feet
north of the track and about 150 feet west of Second street.
The night was cloudy but the air was clear. The engine

carried a headlight that threw a bright light at least 1,600 feet ahead.

Mrs. Dax was thoroughly familiar with the crossing, having gone back and forth over it many times. She was a woman sixty-eight years old, weighed 175 pounds, wore glasses, was slightly deaf, and walked with a limp or hitch at a usual rate of a little over two miles an hour.

The jury found a negligent speed of train on the part of the defendant and that such negligence was the proximate cause of her death. They also found a want of ordinary care on her part that proximately contributed to produce her death, but that her negligence was not more than a slight want of ordinary care, and damages in the sum of $2,500.

From a judgment in favor of plaintiff the defendant appealed.

For the appellant there were briefs by *H. J. Killilea, Rodger M. Trump,* and *Thomas E. Torphy,* all of Milwaukee, and oral argument by *Mr. Torphy* and *Mr. Killilea.*

For the respondent there was a brief by *Platt Whitman* of Highland and *Mason & Priestley* of Madison, and oral argument by *Mr. T. M. Priestley* and *Mr. Whitman.*

VINJE, C. J. The evidence is undisputed that before the deceased reached the passing track she had an unobstructed view to the west along the track for several miles and such view she had continually from the passing track a distance of fifteen feet till she reached the main track. There is no evidence that her attention was by any cause diverted. The jury having found her negligent, such negligence must have consisted in a failure to look or listen, or both. Does such failure under such circumstances amount to more than a slight want of ordinary care? This court has answered the question so many times in the affirmative and given its reasons therefor that no more is now needed than to state that such answer is adhered to, and to refer to a few of the

late cases so holding.  *O'Toole v. D., S. S. & A. R. Co.* 153 Wis. 461, 140 N. W. 293; *Todoroff v. C. & N. W. R. Co.* 169 Wis. 554, 173 N. W. 214; *Puhr v. C. & N. W. R. Co.* 171 Wis. 154, 176 N. W. 767; *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *Twist v. M., St. P. & S. S. M. R. Co.* 178 Wis. 513, 190 N. W. 449; *Plautz v. C., M. & St. P. R. Co.* 180 Wis. 126, 192 N. W. 381; *Sweeo v. C. & N. W. R. Co.* 183 Wis. 234, 197 N. W. 805.

The case of *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570, is relied upon by plaintiff.  That case has been distinguished so many times that it is needless to do so in this case further than to call attention to the fact that plaintiff in the *Gordon Case* drove an automobile, while here the deceased walked.  As stated in *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148, in the case of a foot traveler the zone of danger is so narrow and it is so easy for the traveler to reach a place of safety or to remain there that no close comparison can be made between one traveling on foot and one driving a team or an automobile. In the latter cases the team or automobile may be moving as fast as the train and many things may affect the power to stop or speed up, not to speak of the attention that must be given the team or automobile.  The foot passenger has perfect and instinctive control of himself and can almost instantly step outside the zone of danger.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint upon the merits.

CROWNHART, J. (*dissenting*).    I think I must agree with the learned county judge who presided at the trial that this was a case for the jury.   The negligence of the defendant is conceded,—its train was going at a speed of thirty miles per hour, two and one-half times the speed permitted by law.

The deceased was a woman sixty-eight years of age, unwieldy and limping, so that she could hobble along at a hitching gait of two miles per hour.   She was infirm in

body, easily confused, and we may assume her mentality
was that of persons in her condition at that time of life—
usually somewhat absent-minded.   Her sight was not good,
her hearing not good.   But there is nothing in the evidence
that she did not love life nor have the usual desire to pro-
long it,—nothing to show that she would wish to be ground
under the wheels of a locomotive.   On the night of her death
she started on her way, which would take her across the
defendant's railroad tracks.   It was dark, the sky cloudy.
She moved slowly with careful step.   There was a highway
to cross, which ran parallel to the railroad track, upon which
autos traveled; then she came to the defendant's passing
track, upon which, or near to which, she was seen to stop, to
look west, and then to hurry across on to the main track,
where she was struck and hurled to her death.   What hap-
pened seems fairly plain.   The old lady got on to the passing
track before she noticed the train at considerable distance
away.   When she looked, the headlight blazed in her face
and she became confused, hesitated, then fled in the direction
which she thought was safety.   Evidently she thought the
train was coming on the passing track.   Anyway, it was
coming toward her and she was put in fear.   This is no
idle speculation, I think.   On the contrary, it seems quite
reasonable.   Had the train been running at the lawful rate
of speed she would have escaped.   Just a fraction of a
second would have been sufficient.   We do not have the
poor woman's version of the affair,—only that of defend-
ant's brakeman.   The burden of proof was on defendant.

Now it is said by this court that the deceased was guilty
of negligence that contributed to the injury and proxi-
mately caused her death as a matter of law.   But the jury
said her negligence was but slight, which would not defeat
recovery.   The trial court sustained the jury.   This jury
was composed of twelve men selected by jury commissioners
appointed by the court for their special qualifications.   The
commissioners are required to select as jurors none but

"citizens of the United States who are qualified electors of this state, who are possessed of their natural faculties, who are not infirm or decrepit, who are esteemed in their communities as men of good character, approved integrity and sound judgment, and who are able to read and write the English language understandingly." Sec. 2524, Stats. They thus become expert triers of fact.

"It seems hardly necessary at this late day to reiterate the rule that a jury's conclusion, especially upon such a question as negligence, cannot be disturbed by this court if there be any credible evidence, which, in its most favorable view, to any reasonable mind, can support the conclusion reached. A conclusion of negligence, of course, involves a comparison of the conduct under consideration with the conduct of the great mass of mankind under like circumstances. This standard must rest in the experience and observation of the individual or individuals who are to make the comparison, and in the ordinary affairs of life it is beyond question that men selected from the various professions and employments of life to sit upon juries are quite as able to correctly form and apply that standard as are men whose experience is confined to a single profession." *Warden v. Miller,* 112 Wis. 67, 87 N. W. 828.

Juries are not confined to the evidence—they may consider those things of common knowledge. They would know a good deal about old ladies living a life of toil; they would know about how they would act under certain conditions of great peril. And this jury had a right to assume, as I think they did, that this old lady, with halting step, was finding her way carefully along, not expecting a train, and came on the passing track in a moment of mental aberration, when she suddenly became aware of the approach of the train and was momentarily confused, and ran the wrong way. A person in peril is not expected to exercise calm judgment. Negligence is the failure to use the care that the great mass of mankind would use under the same or similar circumstances. And this is the peculiar attribute of the

jury to say.   What were the circumstances?   First, a feeble old lady of sixty-eight.   It is not the peculiar province of jurists to say just how the majority of old ladies in her station would act under the circumstances.   Jurists have no special insight or experience to guide them in determining this fact.   The constitution and the law says the facts are to be found by the jury.   I am now applying what this court said on that other occasion, which I have quoted, and applying the principles of law which this court has always maintained.

At any rate, I think this decrepit old lady was doing the best she knew how to get safely along.   She wasn't desiring a tragic death, and so I believe she was exercising the care that the majority of old ladies in her condition would exercise under similar conditions.

At one time slight negligence in such a case, on the part of the victim, would defeat recovery.   This was too much emphasized by courts, so finally the legislature enacted sec. 192.27, Stats., to the effect that slight want of ordinary care should not bar recovery.   Following this act, this court, in *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570, very properly said:

"It is evident the legislature has now marked out a limited field within the field of what formerly was and still is recognized as that of 'ordinary care' and designated the smaller field as that which covers situations where the triers of fact can say that, though there was a want of care, yet it was not more than a slight want of the ordinary care required and expected of the great mass of mankind under similar circumstances.   It is a field as to which we shall not attempt the impossible task of offering any formula which will exactly define and prescribe its boundaries, but it must be left, like so many other questions that arise, to the good sense and judgment of those representatives of the great mass of mankind, the petit jurors."

In that case plaintiff recovered under circumstances less favorable to plaintiff than here, it seems to me.   I think this

decision is a step backward and leaves us just where we were before the legislature enacted the statute to give relief. The rule of contributory negligence as applied to a pedestrian and a railroad train is harsh at best. The rule is based upon the idea of equality of wrong. But a railroad engine and a pedestrian are not on an equal basis. The engine running at an unlawful speed is in no danger, but the pedestrian, lawfully traveling on the highway, is the sole victim of a court-made rule under different conditions. The new legislative public policy was a humane attempt to grant relief from the common-law rule. Being remedial legislation, it should be liberally construed.

For these reasons I respectfully dissent.