## KARN v. NORTHERN PAC. RY. CO.

### No. 13941.

United States Court of Appeals
Eighth Circuit.

Dec. 8, 1949.

J. F. X. Conmy, Fargo, N. D. (John Knauf, Jamestown N. D., on the brief), for appellant.

E. T. Conmy, Jr., Fargo, N. D. (E. T. Conmy, Fargo, N. D., on the brief), for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and HARPER, District Judge.

COLLET, Circuit Judge.

 On the morning of October 12, 1944, about two o'clock, the plaintiff-appellant ran his one-ton International truck into the defendant-appellee's train which was standing still across the county road which plaintiff was traversing. He brought this action to recover for personal injuries and damages to his truck. At the close of all the evidence in the case, the trial court directed a verdict for defendant upon the ground that plaintiff's evidence showed that he was was guilty of contributory negligence as a matter of law. Judgment was entered ac-

cordingly, and plaintiff appealed. The assignments of negligence which plaintiff alleged in his petition need not be set forth, as the issues presented on this appeal are confined to the propriety of the court's ruling that plaintiff's contributory negligence prevented recovery by him. In testing the facts to determine whether plaintiff was entitled to have his case submitted to the jury those facts will be viewed in the light most favorable to the plaintiff.

The county road upon which plaintiff was traveling at the time of the collision runs north and south. The railroad consists of two tracks running east and west about 13 or 14 feet apart. Plaintiff was traveling north. He was followed by his brother, also in a truck. Both trucks were empty. When plaintiff's truck was empty, the lights, which were in perfect condition, threw their beam about 120 feet ahead. The exact height of the beam is not shown, but they were set on "high beam." Such lights throw light a substantial distance above their own level as well as to each side of the direct beam. When the truck was loaded, the beam of light was somewhat elevated, with the result that it illuminated the road approximately 250 feet ahead. Traveling north, the road was on a gradual incline for a distance of a quarter of a mile south of the crossing, until it reached a point about 120 feet south of the crossing. From that point north to the crossing, the road sloped downward gradually to the north as it approached the crossing. The night was clear. There was no rain or snow. The roadway was free from ice or snow. The brakes on the truck were in good condition. Before plaintiff got to the top of the ridge 120 feet south of the crossing, he saw the light of an engine to the west of the crossing. He first saw this light when he was about a quarter of a mile south. As he approached the crossing, the left window of his truck was open. He listened for a train, but, although his hearing was very good, he heard neither a bell nor a whistle. He continued to look both ahead toward the crossing and to the west at the headlight to see if he had ample time to cross the crossing ahead of the train. The headlight appeared to be standing still or moving very slowly. As a matter of fact, it was the headlight of another train standing still behind and on the same track as the train plaintiff struck. As he approached the crossing, he could plainly see the planking on both sides of the rails and the roadway beyond. He says he did not see the train on the north track. Actually there was a full-size box car on the track blocking his way. As he approached the south track, he says he slowed down to a speed of about 10 or 15 miles per hour, because the north track was about six inches higher and formed a bump in the road. At 15 miles per hour, he says he could have stopped his truck in 10 or 12 feet. Plaintiff was familiar with the crossing having driven over it many times. On numerous occasions he had observed trains standing on the track at night. On eight or nine occasions he had seen a train at the crossing either split or protected by a flagman. At no time before the accident did he ever observe a train across this crossing at night without a flagman or being split for the crossing. Plaintiff testified that the tracks and the road are both in cuts about five or six feet deep at the crossing. There are snow fences on the embankment, both on the east and west side of the crossing. North of the crossing the road rises sharply for a short distance and then levels off. The box car which was across the road was of a "dirty brown" color. The front of the truck was badly wedged under the center of the box car and could not be pulled out with a wrecker until the air was let out of the front tires. A number of witnesses testified that they had seen trains standing on the track across this crossing at night but that always the trains were either split for the crossing or there was a watchman at the crossing with a light.

■ We can find no fault with the conclusion of the trial court that plaintiff must, under his own evidence, be held to have been guilty of contributory negligence as a matter of law. He knew the crossing was there. He says he was driving not more than 15 miles an hour at the time he came to the south track, 13 or 14 feet from the box car on the north track. He says he could have stopped the truck in 10 or 12 feet, going 15 miles per hour. His lights

were perfect and yet he says that he looked for the train when he was 13 or 14 feet from it and could not see it. He undertakes to explain his failure to see the box car upon the theory that the beam of the headlights did not rise high enough to illuminate any part of the car 14 feet away. That explanation is as the trial court obviously concluded, legally incredible. In Rattie v. Minneapolis St. P. & S. S. M. Ry. Co., 55 N.D. 686, 215 N.W. 158, 159, the court quoted with approval a statement in Hyatt on Trials, sec. 1779, p. 1770: "When to look is to see, testimony that the plaintiff did look and did not see ought to be disregarded. It is legally incredible. * * * (Cases cited.)"

The facts in the case at bar clearly distinguish it from the case of Ausen v. Minneapolis, St. Paul & S. Ste. M. Ry. Co., 193 Minn. 316, 258 N.W. 511, cited by plaintiff. In that case the court did not consider the question whether the lights on the automobile were sufficient to have revealed the presence of the railroad car struck by the automobile in which plaintiff was riding.

 Plaintiff argues that he should be excused of contributory negligence because his attention was diverted to the light of the locomotive west of the train he struck. Lawler v. Minneapolis, St. Paul & S. Ste. M. Ry. Co., 129 Minn. 506, 152 N.W. 882, and De Pow v. Chicago & Northern Western Ry. Co., 154 Wis. 610, 143 N.W. 654, are cited as supporting that argument. Again, the facts in those cases distinguish them from this.

In the Lawler case, the facts show that the day was cloudy and dark with occasional flurries of snow; that a freight train had arrived shortly before the accident and the train crew had been engaged in switching operations; that cars had been moved back and forth on the crossing on the track adjoining the one on which the fast passenger train was approaching; that a strong wind was blowing practically against the approaching train; that when decedent started to cross, the engine which had been switching was standing a short distance from the crossing; and that smoke and steam were being carried by the wind down toward decedent and in the direction from which the fast passenger train was approaching. The circumstances there show a situation very different from that in the case at bar.

In the De Pow case the plaintiff on a dark night drove a team of horses into a flat car on the crossing—obviously quite different from driving a truck, with new lights in perfect condition, set on the "high beam", into a full-sized box car.

In Sherlock v. Minneapolis, St. Paul & S. Ste. M. Ry. Co., 24 N.D. 40, 138 N.W. 976, 980, the Supreme Court of North Dakota said: " * * * and the only diversion of attention excusing the failure to look and listen is where the attention is so irresistibly forced to something else as to deprive a traveler of the opportunity to look and listen."

The record in the case at bar shows that plaintiff testified in response to a question whether or not, from looking at the light, there was any interference with his vision as he glanced back on the road, that he "couldn't say that there was." He also testified that after he saw the light in the west he looked ahead on the road all the time except just to glance to the west; that he glanced to the west two or three times; and that he first saw the light in the west when he crossed the "low line", which is about a quarter of a mile from the "high line." The record shows that by "low line" is meant the railroad track of the Northern Pacific Railway which crosses the road on which plaintiff was traveling at a point about one quarter of a mile south of the tracks where the accident occurred. The "high line" was the track upon which the train was standing. In other words, he traveled about a quarter of a mile north after first seeing the light in the west.

Plaintiff's counsel, with his usual perception and candor, says that it is not claimed in the case at bar that the diversion of attention excused a failure to look at all, but that the diverting influence in this case should be "a material factor in determining that plaintiff was not negligent in relying on the appearance of an open crossing with a train in the distance—when in fact an-

other train was on the crossing—although not visible." Counsel is correct. Diversion of attention under the circumstances described by plaintiff is a material factor in determining whether plaintiff must be held to have been guilty of contributory negligence as a matter of law. But there is no debatable question left for the jury to determine when the plaintiff must have seen had he looked; when he was not prevented from looking by an overpowering diversion; and, if he failed to look, he must indubitably be held to be negligent. There is no logical reasoning by which the conclusion reached by the trial court can be escaped.

■ It is argued further that plaintiff had a right to assume that it was safe to cross the tracks in question because on prior occasions when plaintiff and other witnesses had crossed at night they had observed that freight trains there either had been split for the crossing or a flagman was present. It is said that because of this, the question of plaintiff's contributory negligence was one for the jury. Edwards v. Great Northern Ry. Co., 42 N.D. 154, 171 N.W. 873, is cited in support of that argument. The court there was considering a situation materially different from that in the case at bar. At that crossing, which was in the city of Minot, gates had "been established and a flagman required". The court presumed, for the purposes of that case, 171 N.W. at page 877, that their installation had been duly and lawfully authorized. Reference was made to the authority of the state railroad commissioners, at the instance of the city of Minot, to have required gates and a flagman at the crossing in question, and to the further power of the city, under the state law, to have made the same requirement. The court held that the plaintiff there had a right to assume that if the gates were up and the flagman gone it was safe to cross, though he was still not excused from the duty to exercise ordinary care for his own safety when about to go upon the crossing. What the court said about the right of the plaintiff to assume that it was safe to cross must be considered in the light of the evidence then before the court—which evidence differs materially from the facts in the case at bar.

Likewise, facts and circumstances peculiar to cases from other jurisdictions cited by plaintiff distinguish them from the case at bar. In Hofstedt v. Southern Pacific Co., Cal.App., 1 P.2d 470, the track on which the train was standing was one seldom used for any purpose; the plaintiff had just met and passed an automobile 300 feet from the crossing, coming from the direction of the train which would naturally lead him to conclude that the crossing was open; it was conceded that the freight train was blocking the crossing in violation of a county ordinance; and there was no other train near, the night was dark and there were no lights on or near the train, the headlight on the engine having been extinguished.

In Elliott v. Missouri Pacific Ry., 227 Mo. App. 225, 52 S.W.2d 448, the appeal was from a judgment sustaining a demurrer to the petition, which contained many allegations of negligence fully set out. It was contended that the petition on its face showed that plaintiff was guilty of contributory negligence. An examination of the petition, set out in the opinion, reveals the correctness of the court's ruling that the contention was without merit and the factual difference between that case and this one.

In Orange & N. W. R. Co. v. Harris et al., Tex.Civ.App., 57 S.W.2d 931, plaintiff drove his automobile into a flat car; the night was dark and cloudy, and it had been raining; there was a low hanging arc light about 54 feet from the crossing which plaintiff testified blinded him so that as he went under it he could not see objects beyond it; the street on which plaintiff was driving was one much used at all hours, but the track was one very seldom used by the railroad at night.

It is not contended, and there is no basis in the record for such a contention, that the crossing in question was an especially dangerous or hazardous crossing. It was not one which would, in its nature, require any special warning signs or devices. The fact that plaintiff and other witnesses had observed on previous occasions that the freight train which happened to be there had been split or a flagman was at the train

was a fact to be considered in determining plaintiff's contributory negligence, but it could not excuse the plaintiff on this occasion when, had he looked he could have seen the box car, and, if he failed to look, he was guilty of contributory negligence as a matter of law. Rattie v. Minneapolis St. P. & S. Ste. M. Ry. Co., 55 N.D. 686, 215 N.W. 158, 159.

Plaintiff contends that defendant was negligent in blocking the crossing for a longer period of time than permitted by the statute of North Dakota.[1] The time during which the train had blocked the crossing before the accident was variously estimated by the witnesses at from two and one-half minutes to twenty-five minutes. No one checked the time with a watch. Only one witness estimated it at the latter figure. All the others placed it below fifteen minutes, the time mentioned in Section 49-1119 of the 1943 Revised Code of North Dakota. However, considering the facts in the light most favorable to plaintiff, the temporary obstruction of the highway was not the efficient cause of the accident, as is clearly shown by the record. As the court said in Bowers v. Great Northern Ry. Co., 65 N.D. 384, 259 N.W. 99, 103, 99 A.L.R. 1443: "In some jurisdictions by statute it is made unlawful for a train to occupy a crossing with standing cars longer than a definite time prescribed, nevertheless it is held that where standing cars have exceeded the statutory time and injuries are sustained, the obstruction of the highway is not considered as the efficient cause of such injuries but merely as a condition which of itself furnishes no cause of action." See also State ex rel. Thompson v. Cave, Mo.Sup., 215 S.W.2d 435, 436.

We are convinced that the judgment of the trial court in the case at bar was correct and that it was in accordance with the law of North Dakota. It is therefore affirmed.

1. Section 49-1119, 1943 Revised Code of North Dakota: "Blocking or Obstructing Crossing With Train; Penalty. Any railroad corporation, conductor, brakeman, engineer, switchman, or other employee of any railroad corporation, in charge or in control of any railroad car, engine, or train of cars, who, for a peri- od of more than fifteen minutes at any one time, shall obstruct or block any railroad crossing, rural highway, or village or city street, by placing thereon or permitting any car, engine, or train of cars to stand or remain stationary on any such crossing, is guilty of a misdemeanor * * *."