HAROLD EDWARDS, Respondent, v. GREAT NORTHERN
RAILWAY COMPANY, a Corporation, and Bruce R. Hill,
Appellants.

(171 N. W. 873.)

**Damages — negligence — negligence of locomotive engineer — separate acts
of one defendant.**

1. This action was brought jointly against the railway company and Bruce
R. Hill, an engineer who was in charge of the railway's engine in question by
which plaintiff's automobile was struck while passing over a railway crossing
and plaintiff thereby seriously injured. The jury returned a verdict against
the defendant railway company only. The evidence discloses several acts of
negligence of the railway company apart from the acts of negligence of the
defendant engineer. The evidence of the separate acts of negligence of the de-
fendant railway company is sufficient to sustain a verdict against it.

**Damages — speed of trains — speed in corporate limits.**

2. The power of a municipal corporation to regulate the speed, movement, and
operation of railroad trains, cars, and engines within its corporate limits by
proper ordinances, is well settled. The effect of such an ordinance is to render
the streets safer and more convenient to the public. It is the exercise of a
police regulation. The reason upon which such an ordinance rests is public
safety and convenience.

**Trial — misconduct of court officer.**

3. The defendant railway company alleges misconduct of a court officer dur-
ing the trial, namely, the bailiff who was in charge of the jury during the time
of its deliberations; held, the evidence in this case does not show misconduct by
said court officer.

Opinion filed March 15, 1919.  Rehearing denied April 10, 1919.

Appeal from the District Court of Ward County, Honorable *K. E.
Leighton,* Judge.

Affirmed.

*Murphy & Toner,* for appellants.

NOTE.—On power of municipal corporation to regulate speed of, and signals from,
trains at highway crossings, see note in 17 L.R.A.(N.S.) 561, where it is held that
ordinances regulating the speed of railroad trains are police regulations; and there-
fore the power to pass such ordinances need not be given in express terms, but may
be implied from the power conferred upon the city to pass "all ordinances neces-
sary to the health, peace, convenience, good order, and protection of the citizens."

The ordinary precaution required of one approaching a railroad crossing, when he has no knowledge of the close proximity of the train, is that he look and listen, and make a diligent use of all his faculties to inform himself and avoid collision. West v. R. Co. 13 N. D. 230; Chicago R. Co. v. Houston, 95 U. S. 702; Sherlock v. Minnesota St. P. & S. Ste. M. R. Co. 24 N. D. 40; Haugo v. Great Northern R. Co. 27 N. D. 368; Gast v. N. P. R. Co. 28 N. D. 118, 147 N. W. 793; Christofferson v. Minnesota St. P. & S. Ste. M. R. Co. 28 N. D. 146.

Where the relations between two parties are analogous to that of a principal and agent or principal and surety, or master and servant, the rule is that a judgment in favor of either in an action brought by a third party rendered upon a ground equally applicable to both should be accepted as conclusive against the plaintiff's right of action. Featherston v. Newburg & C. Turnp. R. Co. 71 Hun, 109, 24 N. Y. Supp. 603; Warfield v. Davis, 14 B. Mon. 40; Kansas v. Mitchner, 85 Mo. App. 36; Castle v. Noyes, 14 N. Y. 329; Emma Silver Min. Co. v. Emma Silver Min. Co. 7 Fed. 401; Doremus v. Root & O. R. & Nav. Co. (Wash.) 63 Pac. 572; King v. Chase, 15 N. H. 9, 41 Am. Dec. 675; Ransom v. Pierre, 101 Fed. 665; Hill v. Bain, 15 R. I. 75, 23 Atl. 44; State v. Coste, 36 Mo. 437, 88 Am. Dec. 148; McKenzie v. Baltimore etc. R. Co. 28 Md. 161; Lyons v. Stanford, 42 N. J. Eq. 411, 7 Atl. 869; Gallagher v. Moundsville, 34 W. Va. 730, 12 S. E. 859; Faust v. Baumgartner, 113 Ind. 139, 15 N. E. 337; Schweickhardt v. St. Louis, 2 Mo. App. 571; Mcginnis v. Chicago R. Co. 200 Mo. 359, 98 S. W. 590; Bradley v. Rosenthal (Cal.) 97 Pac. 875; Thompson v. Southern P. R. Co. 161 Pac. 21; Portland Gold Min. Co. v. Strattons Independence, 158 Fed. 68; Young v. Rohrbough (Neb.) 129 N. W. 167; O'Brien v. American Casualty Co. (Wash.) 109 Pac. 52; Hayes v. Chicago etc. R. Co. 218 Ill. 417, 73 N. E. 1003; Indiana, N. & T. Co. v. Lippencott Co. 165 Ind. 365, 75 N. E. 649; Stevick v. N. P. R. Co. 81 Pac. 999; Morris v. N. W. etc. Co. 152 Pac. 402; Sipes v. Puget Sound, etc. R. Co. 102 Pac. 1057; Chicago etc. R. Co. v. McManigal, 103 N. W. 305; Muntz v. Algiers, etc. R. Co. 40 So. 688; Southern R. Co. v. Harbin, 135 Ga. 125, 68 S. E. 1103.

As a matter of law the verdict returned in this case and the subsequent judgment completely acquits the individual defendant of negli-

gence. Howard v. Johnson, 18 S. E. 132; Kinkler v. Junica, 19 S. W. 359; Gulf etc. v. James, 10 S. W. 744; Jones v. Gimmet, 4 W. Va. 104; Westfield v. Abernathy, 35 N. E. 399; Lawson v. Robinson, 75 Pac. 1012; Doremus v. Root, 63 Pac. 572.

The conflict in the evidence that prohibits the court from interfering with the verdict of the jury on a question of fact should be substantial, and not an illusionary conflict. Fuller v. Elevator Co. 2 N. D. 220; Duncan v. Great Northern R. Co. 17 N. D. 618.

The bailiff in charge of the jury was guilty of conduct prejudicial to the rights of the defendant in that he told the jury without consulting the court, that the court would not accept a disagreement. Cole v. Swan, 4 G. Greene, 32; Obear v. Gray, 68 Ga. 182; Green v. Telfar, 11 Ohio St. 61; Flater v. Mead, 53 Ohio St. 67; Terra Haute v. Saxony, 1 Ind. 19; Taylor v. Jones, 2 Head, 561; Chesapeake v. Barlow, 83 Tenn. 537; Physioc v. Shay, 75 Ga. 466; Gholston v. Gholston, 31 Ga. 625; Brown v. State (Wis.) 106 N. W. 536; Hudson v. State (Wis.) 86 N. W. 596; State v. Langford, 14 So. 182; State v. Murphy, 17 N. D. 50.

*F. B. Lambert,* for respondent.

The rule is that where fair-minded men might honestly differ under all the facts as disclosed by the evidence, the question is one for the jury. Berry, Automobiles, § 160; Pendroy v. Great Northern, 17 N. D. 433, 117 N. W. 534; Coulter v. Great Northern, 5 N. D. 584, 67 N. W. 1046; Chambers v. Soo, 37 N. D. 378; Peterson v. Fargo-Moorehead St. R. Co. 37 N. D. 441; Zink v. Lahart, 16 N. D. 56, 110 N. W. 931; Borough v. Soo (Iowa) 167 N. W. 177.

An affidavit filed in a motion for new trial by an attorney in the case, based entirely upon alleged statements of jurors to affiant, was hearsay, and not entitled to consideration. Johnson v. Seel, 26 N. D. 299; Waltham Piano Co. v. Freeman, 159 Iowa, 567, 141 N. W. 403; 2 Thomp. Trials, § 2603; 2 Jones, Ev. p. 644, and cases cited.

That the bailiff remarked to members of the jury that if they did not agree they would be kept from Saturday to Monday,—*held* not misconduct warranting new trial. Becker v. Churdan (Iowa) 157 N. W. 221; 17 Am. & Eng. Enc. Law, 2d ed. 1204; Wiggins v. Downer, 67 How. Pr. 65; Melling v. Industrial Mfg. Co. 78 Ga. 260.

Misconduct or irregularity on the part of the jurors, if not induced

by the prevailing party, will not ordinarily be ground for setting aside the verdict, unless it was calculated to prejudice the unsuccessful party. 17 Am. & Eng. Enc. Law, 2d ed. 1204; Wiggins v. Downer, 67 How. Pr. 65; Nelling v. Industrial Mfg. Co. 78 Ga. 260.

Although the plaintiff has negligently placed himself in a dangerous position, he can recover if the defendant, after knowing of the plaintiff's danger, could have avoided the injury by the exercise of ordinary care. Berry, Automobiles, § 156; Green v. Los Angeles Terminal R. Co. 143 Cal. 40, 101 Am. St. Rep. 68, 76 Pac. 719; Denver & R. G. R. Co. v. Buffehr, 30 Colo. 27, 37, 69 Pac. 582; Tully v. Philadelphia, W. & B. R. Co. 3 Penn. (Del.) 464, 50 Atl. 95; Hawley v. Columbia R. Co. 25 App. D. C. 5; Illinois Central R. Co. v. Hutchinson, 47 Ill. 408; Indianapolis & C. R. Co. v. McClure, 26 Ind. 374, 86 Am. Dec. 467; Keefe v. Chicago & N. W. R. Co. 92 Iowa, 182, 54 Am. St. Rep. 542, 60 N. W. 503; Baltimore City Pass. R. Co. v. Cooney, 87 Md. 267, 39 Atl. 859; Wise v. St. Louis Transit Co. 198 Mo. 558, 95 S. W. 898; Rapp v. St. Louis Transit Co. 190 Mo. 161, 88 S. W. 865; Mapes v. Union R. Co. 56 App. Div. 508, 513, 67 N. Y. Supp. 358; Deans v. Wilmington & W. R. Co. 107 N. C. 689; Kerwhacker v. Cleveland, C. & C. R. Co. 3 Ohio St. 172, 62 Am. Dec. 246; Texas & N. O. R. Co. v. Brown, 14 Tex. Civ. App. 699; Norfolk & W. R. Co. v. Spencer, 104 Va. 659, 52 S. E. 310; Grand Trunk R. Co. v. Ives, 144 U. S. 408, 36 L. ed. 485, 12 Sup. Ct. Rep. 679; Inland & S. C. Co. v. Tolson, 139 U. S. 551, 558; Garside v. New York Transp. Co. 146 Fed. 588, 595, affirmed in 157 Fed. 521.

Under the doctrine of "the last clear chance" the defendant should have avoided the accident. Acton v. Fargo & M. St. R. Co. 20 N. D. 434, 129 N. W. 225.

In order that the estoppel of a judgment may become operative and effective, a party claiming its benefits must plead the adjudication in bar of a subsequent action and on the trial establish it by competent proof, and a failure to do either will be deemed a waiver of the rights depending on such estoppel. Borden v. Graves, 20 N. D. 225, 127 N. W. 104; 2 Van Fleet, Former Adjudication, § 685; Union v. Memphis, 111 Fed. 561; McLean v. Baldwin, 69 Pac. (Cal.) 259; Donaldson v. Rogers, 2 Bibb, 57; Howks v. Truesdell, 99 Mass. 557; McReady v. Rogers, 1 Neb. 124; Re Herbert, 57 Cal. 257.

A verdict without judgment cannot be given in evidence. Donaldson v. Rogers, 2 Bibb, 57; Howks v. Truesdell, 99 Mass. 557; McReady v. Rogers, 1 Neb. 124; Re Herbert, supra.

A master may sometimes have a right of action against a servant because of whose negligent act he has been subjected to liability to a third person. This is not the case where the master has concurred with the servant in creating the liability. Central R. Co. v. Macon (Ga.) 71 S. E. 1076; Cincinnati R. Co. v. Louisville & N. R. Co. (Ky.) 30 S. W. 408; 9 Cyc. 805; Southwestern v. Krause (Tex.) 92 S. W. 431; Deleplain v. Kansas City (Mo.) 83 S. W. 72.

It was the duty of the railroad company to keep a proper lookout for themselves at a highway crossing which is within the limits of a city. Rober v. N. P. R. Co. 25 N. D. 394, 142 N. W. 22; Stone v. N. P. R. Co. 29 N. D. 480, 151 N. W. 36; Severtson v. N. P. R. Co. 32 N. D. 200, 155 N. W. 11; Pendroy v. G. N. R. Co. 17 N. D. 433, 117 N. W. 531; Kunkel v. Soo R. Co. 18 N. D. 367, 121 N. W. 830.

GRACE, J. Appeal from the district court of Ward county, North Dakota, Honorable K. E. Leighton, Judge.

This appeal is from a judgment in plaintiff's favor for $8,000, and from an order of the court denying defendant's motion for a judgment notwithstanding the verdict or in the alternative for a new trial.

The complaint is in the usual form. Among other matters, it charges Bruce R. Hill was the servant, employee, and agent of the Great Northern Railway Company, and engaged as an engineer in the running and operating of locomotive engines of the railway company; that he was in charge and control of the operating of a certain switch engine and the cars thereto attached which caused the injuries to the plaintiff; that plaintiff was driving and traveling a Ford automobile on Third street, N. E., in the city of Minot, North Dakota, a public street, and while in the act of crossing the railway track of the defendant, at said point, he was struck by the defendant railway company's locomotive while it was being run and operated under instructions from and for the use and benefit of the Great Northern Railway Company by the defendant Hill, as the agent, employee, and servant of the railway company, with such force that the automobile was completely demolished and the plaintiff thrown with great force and violence from

the automobile to the ground; was pushed and dragged by said locomotive over the track and railway bridge of the Mouse river, thereby rendered unconscious for a period of sixteen days; that his face and body were permanently maimed and disfigured; that he was rendered sick and sore; his eyes and ears injured to such an extent that both his sight and hearing are permanently impaired, one of his ears permanently disfigured; his mind and memory seriously affected and injured; his nervous system so shocked and broken down that he is permanently disabled from ever concentrating his mind to mental work, and his body so injured and broken in health that he is not and never will be able to perform manual labor or earn a livelihood in any way. An ordinance of the city of Minot is pleaded, the terms of which prohibit any person, firm, or corporatoin from driving any locomotive engine, railroad car, or train of cars within the limits of the city of Minot at a greater rate of speed than 6 miles per hour. Further allegations of the complaint are that the train which caused the accident and injured the plaintiff consisted of a locomotive and two cars; that the locomotive was a switch engine, and the crew consisted of the defendant Hill and the fireman; that they had been engaged in switching cars in the yard of the defendant; that the rear end of the locomotive as it approached the crossing was not provided with the statutory or sufficient headlight or tail-light, and was in fact provided with no light; that the plaintiff knew the time of trains and knew that none were due at that place, and relied upon that fact, in part, for safety; that the night upon which the accident occurred was dark and foggy, and a cold rain fell from time to time during the night; that the automobile had side curtains on, and that the view of plaintiff from a point east of the crossing where the accident occurred was obscured by buildings near the track and an accumulation of cars on numerous sidetracks; that the crossing was and is of a highly dangerous character; that the defendant for a long time prior to the accident had kept and maintained, at said crossing, a gateman with danger signals for protection of travelers and the public; that at the time of the accident the gates were open and no danger signals were displayed and no gateman was present or in charge of the gates; that the defendants and each of them were grossly negligent in the operation of said locomotive and cars, and propelled the same across the crossing at a dangerous and reckless

speed without any regard for the life and rights of the plaintiff or the public in general; that the automobile in which the plaintiff was riding was not property of plaintiff. The amount of damages claimed by plaintiff in his complaint for defendant's alleged negligence was $25,297.35.

The answer of the railway company admits it is a corporation and that Bruce R. Hill was the employee of the defendant railway company in the capacity of engineer, and was operating the engine and train described in the complaint. Defendant denies that the train which collided with the automobile was proceeding at a speed alleged by the plaintiff, and claimed that the train was proceeding at a lawful rate of speed at the time; denies there was no light burning on the engine as it approached the crossing, and avers that the proper and legal lights were displayed and shown upon the engine at that time. Denials are made by the defendant railway company to the material allegations of the complaint. The defendant railway company avers that the damages occasioned to plaintiff were caused through his negligence and contributory negligence.

The facts are as follows:

The plaintiff at the time of the accident was a man twenty-three years of age, and was then and for about six weeks prior thereto engaged in operating a taxi in Minot. The taxi consisted of a Ford car which, on the night in question, as it attempted to cross the defendant's railway track at the crossing on third street, had a curtain on the east side. The curtain, according to the testimony of plaintiff, did not fit tight. At the time of the collision and injury, a switch engine and tender attached was being operated backward by the defendant, and Hill was in charge as engineer thereof. The engineer was on the right side in the cab of the engine, the fireman on the left. There were three switchmen on the front switch footboard.

The fireman, on cross-examination, testified as follows:

Q. In which way did you look? You was looking west, you say.
A. Yes, sir.
Q. Did you look out to the north at all?
A. Yes, sir.
Q. And you saw the car about 30 feet before it reached the track?

A. Yes, sir. I should judge it was about that.

Q. You were going 3 miles and a half per hour?

A. I should judge it was about that.

Q. And did you immediately shout to the engineer to stop the train?

A. When they hit.

Q. You didn't tell him to stop until after they had struck?

A. No, sir.

Q. Well, you had plenty of time, didn't you, to have shouted?

A. If I had known he was coming in, I should have.

Q. You saw him coming toward you 30 feet away, didn't you?

A. I saw him coming that way. Yes, sir.

Q. But you didn't say a word until after you had struck him?

A. No, sir.

The engine and tender were being operated along the main track. The switch engine and the Ford car which the plaintiff was driving collided on the crossing, and the plaintiff received serious injuries, to recover damages for which this action is maintained. From the photographs and the testimony, it would appear that the automobile was badly wrecked by the collision. The plaintiff's view toward the east was obstructed, as he approached the crossing, by a fence, buildings of the Lumber & Coal Company, a mill engine house, elevators, and cars.

The engine stopped about 40 feet beyond the bridge, 177 feet from the point of the accident. The plaintiff was taken out of the automobile while it was on the bridge.

The appellant assigns nine specifications of error. The first two assignments of error are based upon the refusal of the court to direct a verdict in defendant's favor. In this, the court was not in error. The third assignment of error is based upon the court's failure to instruct the jury that no negligence had been shown by failure to provide a headlight, and that such question should not have been submitted to the jury. In this regard the trial court gave the following instruction: "In this connection, there was a duty upon the part of the defendant company to provide a headlight upon the locomotive in question, but they were under no obligation to furnish an electric headlight or one

42 N. D.—11.

different than that claimed by the defendant to have been upon the locomotive in question."

There was no error in giving the instruction. The defendant while operating its switch engine within the yards was not required to have an electric headlight. The defendant, at such time, had the privilege of furnishing a sufficient headlight for its switch engine, other than an electric one, while the switch engine was being used within the yards. Whether the headlight furnished by the defendant for the switch engine in question was sufficient for the purposes for which it was used, or whether the defendant was negligent in not furnishing a more efficient headlight, was a question of fact for the jury, and was properly submitted to them under all the evidence in the case relative thereto. The fourth assignment of error relates to the failure of the court to instruct the jury that there had been no negligence shown in defendant's failure to furnish a bell or steam whistle which was rung or whistle blown for 80 rods before reaching a street crossing. The following was the instruction given by the trial court: "They were also under obligations to furnish a bell of at least 30 pounds in weight or a steam whistle upon each locomotive, which bell shall be rung or whistle shall be blown for a distance of at least 80 rods from the place where the said railroad crosses any road or street, and said bell shall be kept continuously ringing or the whistle blowing until they shall have crossed such road or street. A failure to furnish either a headlight, bell, or whistle would not be such negligence in themselves as would warrant a recovery by the plaintiff, but their lack of compliance would be merely evidence of negligence, which you may consider together with the other evidence in determining this question."

The substance of the provisions of § 4642, Compiled Laws 1913, is largely incorporated into the instruction given. The section in question relates to the size of the bell, and provides for the steam whistle, and provides for the ringing of the bell or the blowing of the steam whistle at a distance of at least 80 rods from where the railroad shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street. There is nothing arbitrary about such statute, and it is one which really is as beneficial to the railroad as to the public. Its purpose is to prevent injuries to persons who may be about to cross a railroad at a point where the railroad

crosses the street or road.  The ringing of the bell and the blowing of the whistle is useful for many other purposes, among which may be the frightening of stock from the railroad at crossings or other points on the line.  It was a proper question for the jury, in this case, under the testimony, whether the bell of the switch engine or the whistle was blown as it came toward and passed over the crossing.  It is contended that the switch engine did not come 80 rods, and therefore that part of the law relative to the distance for which the bell must be rung or whistle blown does not apply.  The distance which the defendant's switch engine had traveled before reaching the crossing was not 80 rods.  The defendant could have rung the bell or blown the whistle for the distance from the point where it did start until it had passed over the crossing.  It would thus have complied with the spirit of the law and such compliance would have been sufficient.  It was a question of fact for the jury under all the testimony relative thereto, whether or not the defendant railway company was negligent in this regard.  The instruction, as we view it, was a proper one.  The fifth error complained of was the submitting to the jury the question of the speed of the locomotive at the time of the accident, and as to whether such speed was in excess of 6 miles per hour.  The city of Minot has an ordinance providing that no person, firm, or corporation shall run or drive or cause to be run or driven any locomotive engine, railroad car, or train of cars within the limits of the city of Minot at a greater rate of speed than 6 miles per hour.  It has a commission form of government.  It has authority under subdivision 15 of § 3818, Compiled Laws 1913, to enact such an ordinance.  The power of a municipal corporation to regulate the speed, movement, and operation of railroad trains, cars, and engines within its corporate limits by reasonably proper ordinances, is well settled.  The effect of such an ordinance is to render the streets safer and more convenient to the public.  It is the exercise of a police regulation.  It defines what is a proper and legitimate use of the streets by railroad companies with reference to public safety and convenience.  Baltimore & O. S. W. R. Co. v. Peterson, 156 Ind. 364, 59 N. E. 1044; Meek v. Pennsylvania Co. 38 Ohio St. 632.

The question of the speed of the locomotive was properly submitted to the jury, in view of the state of the testimony in that regard and the physical facts attendant upon the accident.  The sixth assign-

·ment of error is that the court erred in instructing the jury that the defendant's failure to operate gates at the crossing in question or to have a flagman there was evidence of negligence; that it should have instructed the jury that the fact that the gates were not being operated at the time was immaterial. That part of the instruction complained of is as follows: "There is also no obligation, as far as the evidence in this case shows, for the defendant to operate gates at the crossing in question, or to maintain a flagman there; and even if the gates were in operation at said place and time or a flagman posted at this crossing, the failure to do so would be merely evidence of negligence, and would not, in any manner, relieve the plaintiff from the burden of exercising ordinary care when about to go upon the crossing."

Certainly there was no error in the giving of such instruction so far as defendant is concerned. It was entirely favorable to it. There is sufficient testimony in the record to show that the crossing in question was dangerous. The fact that a flagman is maintained there, and that there are gates, aside from any other evidence, denote the dangerous character of the crossing. The fact that there are gates and a flagman at such crossing indicates that the defendant established the same voluntarily in view of the necessity therefor, or that it was required by the city of Minot or the board of railroad commissioners acting under authority of law relative thereto to establish the same; such a proceeding by the city of Minot may have been initiated and conducted under §§. 4689 and 4690, Compiled Laws 1913; and addressed to the railroad commissioners, and a proper order by them may have been made requiring the gates and flagman at the crossing in question. Under subdivision 21 of § 3818, Compiled Laws 1913, cities having a commission form of government, have authority to require railroad companies to keep flagmen at railroad crossings of streets and provide protection against injury to persons and property. It is sufficient to say that at the crossing in question gates have been established and a flagman required, and we must presume for the purposes of this case that their installation has been duly and lawfully authorized and required. Where there are gates at a crossing, such as this, it is presumptively negligence on the part of the defendant railway if it fail, at the proper time and occasion, to use or properly operate them and thus endanger public safety, and with like effect if it fail to have

the flagman perform and execute his duties. Notwithstanding there are gates and a flagman at such crossing, one desiring to cross the railroad at such point is not excused from the use of ordinary care when about to go upon the crossing. Whether one does use ordinary care under such circumstances, and whether the railroad company was negligent in the operation of the gates and in the failure to maintain a flagman at that point, and all kindred questions, are for the jury. The instruction, as we have before indicated, was entirely favorable to the defendant, and of this it cannot complain. There is no error in the instruction of the court complained of in the seventh assignment of error. There is no error in the court denying defendant's motion for a judgment notwithstanding the verdict or in the alternative for a new trial. As we view it, the evidence is sufficient to support the verdict. The verdict is not against the law.

Defendant relies largely as a defense upon contributory negligence. This question was exclusively for the jury, and was whether or not the plaintiff exercised ordinary precaution in approaching the crossing. The verdict was for the plaintiff. The jury must have concluded there was no contributory negligence. Where gates and a flagman are maintained at a crossing, the public or one desiring to pass over the crossing, where such gates are up, have a right to assume that it is safe to cross and that there is no train approaching. Under such circumstances, it is an invitation to the public to pass over the crossing, and it greatly tends to assure one's mind that there is no danger in passing over the crossing. When the gates are down, it is a warning to the public that there is an approaching train which will pass over the crossing. The gates being up, the public is lulled into a sense of security, and while one approaching a crossing where there are gates and a flagman should use ordinary care, one should not be held to the same degree of care as at a crossing where there are no gates or flagman maintained. The average person of ordinary intelligence approaching a crossing at which there are maintained gates and flagman would assume, if the gates were up, that there was no train approaching and would feel safe in entering upon the crossing, and that he had nothing to fear from trains. He would not be bound to assume that the railroad company would neglect its duty and thus imperil his life. He would have a right to feel a sense of security. If this is not true, gates at a dangerous

railroad crossing, instead of becoming a protection and safeguard for the public, may many times increase the danger and result in loss of life or personal injury where otherwise no loss of life nor injury would occur. Gates at a railroad crossing, such as the one under consideration, mean, when up, it is safe to pass over the crossing and no train is approaching; and down, it is unsafe to pass over the crossing and a train is approaching. That is the interpretation which the public who use such crossing would give to such matters. If the defendant in this case failed to operate the gates after 12 o'clock at night, that, in no manner, would relieve it from liability so far as the public is concerned or anyone passing over the railroad crossing where gates and flagman are maintained. The gates should be operated at all times when trains are passing over such crossing. In such cases, it is required on the grounds of public policy for public safety.

We have examined with considerable care the different crossing cases cited by the appellant, and find nothing in any of the cases cited which would cause us to come to any other conclusion than that which we have reached. The facts in the case are necessarily different in many ways. Most of the cases cited relate to crossings where there are no gates, or where the injuries occurred at crossings in daylight, and there are other facts and circumstances which distinguish those cases from this. It is not necessary to examine and discuss each case separately, nor the wisdom of such decisions.

The negligence of the defendant and the contributory negligence of the plaintiff, if any, were submitted to the jury, who are the exclusive judges of the same. The jury have determined these matters, and necessarily have determined that the defendant was negligent, and the plaintiff was not guilty of contributory negligence. This finding of fact by the jury is conclusive upon this court.

Defendant also relies upon the further proposition that the action having been maintained against the Great Northern Railway Company and Bruce R. Hill, the engineer, as joint tort-feasors, and no verdict having been returned against Hill, who was in charge of the engine in question, and the verdict having been returned against the railway company only, the exoneration of Hill exonerates the railway company. If that principle of law were true, as we view it, it would have no application to this case, at least, is in no manner controlling.

This case is not one where negligent acts of the servant only contributed to the injury of the plaintiff, but, aside from that, the defendant railway company was guilty of numerous acts of negligence which would appear to be the proximate cause, or constitute at least a large part of the proximate cause, of the injury. The liability of the defendant railway company for this reason is not wholly dependent on the negligent acts of the servant. It is liable because of its own negligent acts separate and apart from the negligent acts of its servant. The plaintiff charges the defendant railway company with negligence for the insufficiency of the headlights upon the engine in question; the negligence in failing to maintain a flagman whose duty was to operate the gates at the crossing where the injury occurred; the presence of cars on the sidetrack obstructing the view eastward from the crossing; failure to keep proper lookout, and the failure of the fireman to give immediate warning to the engineer upon discovering the peril of the plaintiff. Such negligent acts, if they existed or occurred, were the negligent acts of the defendant railway company separate and apart from any negligent acts on the part of the engineer. Whether such negligent acts occurred or existed was a question of fact for the jury under all the testimony relative thereto. The jury returned a verdict in favor of the plaintiff and against the defendant railway company and thereby held the defendant railway company liable. The verdict is supported by the evidence. The exoneration, if any, of the engineer by failure of the jury to return a verdict against him, in no manner aids the defendant railway company, for it is liable because of its own acts of negligence which contributed to the injury of the plaintiff. The rule of law contended for by the defendant railway company, that the jury having returned no verdict against the engineer the defendant railway company is exonerated, has no application in this case or, if so, it is so remote as to be of no consequence. The tort was joint and the action maintained is joint. This, however, does not prevent recovering against the defendant railway company; for in this case it is severally liable for its acts of negligence which were apart from those of the engineer. The general rule is that where the negligence of two or more persons concurs in producing a single, indivisible injury, such persons are jointly and severally liable, and this though there were no common duty, common design, nor concert of action.

"If two or more persons owe to another the same duty and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well-settled principles each, any, or all of the tort-feasors may be held." Matthews v. Delaware, L. & W. R. Co. 56 N. J. L. 34, 22 L.R.A. 261, 27 Atl. 919, 12 Am. Neg. Cas. 285.

The master and servant are in general jointly and severally liable for the tortious act of the servant committed in the course of the master's business. Central of Georgia R. Co. v, Brown, 113 Ga. 414, 84 Am. St. Rep. 250, 38 S. E. 989, 10 Am. Neg. Rep. 30; Cincinnati, N. O. & T. P. R. Co. v. Cook, 113 Ky. 161, 67 S. W. 383; Whittaker v. Collins, 34 Minn. 299, 57 Am. Rep. 55, 25 N. W. 632; Schumpert v. Southern R. Co. 65 S. C. 332, 95 Am. St. Rep. 802, 43 S. E. 813, 13 Am. Neg. Rep. 676. In the case of Schumpert v. Southern R. Co. the court said: "The servant is liable because of his own misfeasance or wrongful act in breach of his duty to so use that which he controlled as not to injure another. The master is liable because he acts by his servant, and is therefore bound to see that no one suffers legal injury through the servant's wrongful act done in the master's service within the scope of his agency. Both are liable jointly because from the relation of master and servant they are united or identified in the same tortious act resulting in the same injury," and we may add this to the rule in the Schumpert Case, the master is liable by reason of his own negligent acts in addition to his liability for the negligent acts of his servant when acting within the scope of his authority. In other words, the testimony shows that the defendant railway company was guilty of other negligent acts which contributed to the injury of the plaintiff than those committed by the engineer, and this though the action was maintained jointly against both and no verdict was returned against the engineer. In this case it was legal and proper for the jury to return a verdict against the defendant railway company, awarding plaintiff damages against it on account of its liability arising out of its act of negligence above referred to.

The last point necessary to notice is the alleged misconduct of a court officer, the bailiff who was in charge of the jury during the time of its deliberations. This point arises in connection with the defendant's motion for a judgment notwithstanding the verdict or for a new trial. In connection therewith, the defendant claims that the "jury

had been out substantially twenty-four hours; that they asked the bailiff to report to the court, inquiring whether or not the court would accept a verdict of disagreement. Thereupon, without any consultation with the court whatsoever, the bailiff informed the jury that the court would not accept a disagreement. Shortly thereafter the verdict was returned in this case." The affidavits of A. M. Thompson and B. H. Bradford were offered in support of the foregoing contention and of the motion. The affidavits set forth certain statements claimed to have been made by bailiff Roche, who was in charge of the jury, to the affiants as to certain conversations which Roche had with one of the jury, which the affiants claim was to the effect as above stated. The affidavits do not show that the affiants heard any of the conversation between the bailiff and the jury or any of them. The statements of Roche, if any, to the affiants, under these circumstances, would be of little or no value as evidence of the statement attempted thus to be proved. The statement of Roche to the affiants, under the circumstances under which it was made, was mere hearsay. The certificate of the presiding judge, the Honorable K. E. Leighton, shows the affidavits in question fell far short of stating what actually transpired relative to this matter. It shows that on the forenoon of the 20th day of December, 1917, prior to the time the verdict was rendered, bailiff Roche, then in charge of the jury, reported to Judge Leighton that the jury in said action had agreed to disagree and had asked him (Roche) to ask Judge Leighton that they be discharged; that he stated to the bailiff that he would not accept such report at that time, nor would the jury be discharged without further considering the case, and in effect stated that he would let the matter go for a while and give them further time to consider the case; that had the jury been brought in to report and a roll call had, "I would then have simply given the jury in substance the same information that I gave the bailiff."

In view of this plain statement by the court, it must be held that there is no prejudice in the statements claimed to have been made by Roche, even if it were conceded that they were made, of which there is no competent proof. Roche's affidavit should have been received in opposition to the motion. The motion was double in its character,—it was for the judgment *non obstante* or for a new trial. Under subdivision 1 of § 7663, Compiled Laws, 1913, relating to a motion for a

new trial, the plaintiff was entitled to serve and use, in said motion, counter affidavits.

We have examined the record with care and find no reversible error therein. The judgment is affirmed, with statutory costs.

ROBINSON, J.   I dissent.