Fred CUDWORTH, Plaintiff and Appellee,

v.

Jack CUDWORTH, Personal Representative of the Estate of Edwin Cudworth, Deceased, Defendant and Appellant.

Civ. No. 9975.

Supreme Court of North Dakota.

Nov. 12, 1981.

**332**

Robert E. Manly, of Manly & Manly, New Rockford, for plaintiff and appellee.

James Bekken, of Hovey, Bekken & Ramstad, New Rockford, for defendant and appellant.

VANDE WALLE, Justice.

Jack Cudworth appeals a judgment of the district court, Eddy County, which voided his sale of land and canceled a mortgage upon the land due to a breach of his fiduciary duty as a personal representative. We affirm in part but remand for modification of the judgment.

After Jack's brother, Edwin, died intestate, Jack was appointed personal representative. The major asset of the estate was 727 acres of land. Before Jack sold the land he sent a letter to the heirs soliciting suggestions about how and to whom the land should be sold. Jack listed four options. Two of the options were described as unworkable and cumbersome by Jack. A third option was to sell the land to the highest bidder. The fourth option was to sell the land to Jay, Jack's son. A number

of heirs responded, including Fred Cudworth, a brother to Jack and Edwin. Jack then sold the land to his son, Jay, for $180,000. Jay borrowed $95,000 from his father, Jack, and the remainder from a bank. When Jay received a loan for the total amount from the Farmers Home Administration (FmHA) he repaid his father and the bank. Fred does not contest that the land should be sold nor the purchase price, only the sale to Jay.

There are three issues:

1. Must the judgment of the trial court be set aside due to the nonjoinder of Jay, the grantee, and the FmHA, a mortgagee, as parties defendant?

2. Does Section 30.1–18–13, N.D.C.C. (§ 3–713, Uniform Probate Code), permit the trial court to void the sale of property of the estate by a personal representative to his son?

3. Is the sale by the personal representative to his son of property of the estate a breach of the trust imposed by Section 30.1–18–11, N.D.C.C. (§ 3–711, Uniform Probate Code)?

Fred was the plaintiff in the action below and Jack was the named defendant. Fred's suit was to void both the sale to Jay and the mortgage upon the property. Neither Fred nor Jack attempted to join Jay or the FmHA as parties defendant. Jack now argues that the judgment against him must be set aside because of the absence of "indispensable" parties under Rule 19, N.D.R. Civ.P. Fred argues that a defense of failure to join indispensable parties may not be asserted for the first time on appeal. Each cites authority for his position but ignores the context in which each of their assertions may be correct. We believe that in this situation, if a judgment appears to prejudice the interests of an absent party and the question of joining the absent party has not been raised at the trial, we may act to protect the absent party.

█ The purpose of the compulsory joinder rule, Rule 19, N.D.R.Civ.P., is to protect an absent party from prejudice, protect parties from harassment by successive suits, and protect the courts from being imposed upon by multiple litigation. Wright & Miller, *Federal Practice & Procedure*: Civil § 1609. The failure of the court to protect those not before it may amount to a violation of due process should the judgment in the action have the effect of destroying the rights of the absent party. In *Provident Tradesmens B. & T. Co. v. Patterson*, 390 U.S. 102, 123, 88 S.Ct. 733, 745, 19 L.Ed.2d 936, 952 (1968), the Court implied that indispensability may involve an issue of due process:

> "Neither Rule 19, nor we, today, mean to foreclose an examination in future cases to see whether an injustice is being, or might be, done to the substantive, or, for that matter, constitutional, rights of an outsider by proceeding with a particular case."

In *National Farmers Union Prop. & Cas. Co. v. Schmidt*, 219 N.W.2d 111, 114 (N.D. 1974), we said:

> "The spirit and purpose of Rule 19(a) and 19(b) are to protect the interest of parties who might be deprived of due process by the trial of an action in their absence . . ."

The time at which a party raises another's absence is immaterial when the interests of the absent parties are prejudiced. If the interests of the absent parties have been prejudiced the issue of their nonjoinder may be raised for the first time at the appellate level. 390 U.S. at 111, 88 S.Ct. at 738–739, 19 L.Ed.2d 945–946.

█ A different situation is present when a party is prejudiced due to the possibility of harassment through successive suits by absent parties. Rule 12(h)(2), N.D. R.Civ.P., may be used to raise the question of joinder of absent parties before or during the trial. When the question of joinder is raised the trial court is to use the four factors listed in Rule 19 to decide whether to dismiss, join the absent parties, or proceed without the absent parties. However, if a party seeks dismissal in order to protect himself and not to vicariously protect the absent parties against a prejudicial judgment, his motion to dismiss should be time-

ly. Undue delay in making the motion can properly be considered as a reason for denying the motion. Advisory Committee Notes to 1966 Amendment of Rule 19, Fed.R. Civ.P. Once the trial has been concluded, the pragmatic considerations in Rule 19 weigh heavily in favor of preserving the judgment of the trial court or modifying it to protect the interests of the absent parties and against dismissal unless there has been real prejudice to those not before the court. Wright & Miller, *Federal Practice & Procedure*: § 1609.

The decision in *Provident Tradesmens, supra*, resolves the issue here: "To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." 390 U.S. at 119, 88 S.Ct. at 743, 19 L.Ed.2d at 950. Only upon consideration of the four interests in Rule 19(b) may the court conclude that a person is indispensable and that in his absence it would be preferable to dismiss the action rather than retain it. Advisory Committee Notes to 1966 Amendment of Rule 19, Fed.R.Civ.P.

Rule 19(b) describes the interests of the four parties which must be considered. The plaintiff's interest is in preserving his judgment. The defendant's interest is in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another. The courts and the public have an interest in the complete, consistent, and efficient settlement of controversies. The third criterion of Rule 19(b), "whether the judgment issued in the absence of the nonjoined person will be 'adequate,' . . . [refers] to this public stake in settling disputes by wholes, whenever possible, . . . After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent." *Provident Tradesmens*, 390 U.S. at 111, 88 S.Ct. at 739, 19 L.Ed.2d at 946. The absent party's interest is in the extent to which the judgment may impair or impede his ability to protect his stake in the subject matter of the suit.

Both a trial court and this court have more than one option when faced with a question of joinder of absent parties:

"Rule 19(b) also directs a district court to consider the possibility of shaping relief to accommodate these four interests. Commentators had argued that greater attention should be paid to this potential solution to a joinder stymie, and the Rule now makes it explicit that a court should consider modification of a judgment as an alternative to dismissal. Needless to say, *a court of appeals may also properly require suitable modification as a condition of affirmance."* *Provident Tradesmens*, 390 U.S. at 111–112, 88 S.Ct. at 739, 19 L.Ed.2d at 946. [Footnotes omitted; emphasis added.]

The absent parties here, Jay and FmHA, have an interest in the land, the subject matter of this suit. Jay has a deed to it and FmHA has a mortgage on it. Their interests have been prejudiced by the judgment of the trial court. It is unnecessary, however, to reverse the judgment because the interests of the absent parties, Jay and FmHA, can be protected; nor is it necessary to remand for a new trial with all parties present. We do not believe that Jay or FmHA could have legal arguments different from Jack's. Counsel for both parties at oral argument agreed with this insofar as it involves Jay. The fact that an absent party had an interest in the suit only means that he cannot be bound by the judgment, i. e., that it is not res judicata as to, or legally enforceable against, a nonparty. "It obviously does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense." *Provident Tradesmens*, 390 U.S. at 110, 88 S.Ct. at 738, 19 L.Ed.2d at 945. [Footnotes omitted.] Here, we believe that the interests of all parties (the plaintiff, the defendant, the court and the public, and the ab-

sent parties) can be protected by remanding for modification to order repayment to Jay and FmHA.

The second issue requires an interpretation of Section 30.1–18–13, N.D.C.C. (§ 3–713, Uniform Probate Code). That section reads:

"Any sale or encumbrance to the personal representative, his spouse, agent, or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless:

"1. The will or a contract entered into by the decedent expressly authorized the transaction; or

"2. The transaction is approved by the court after notice to interested persons."

According to the Editorial Board Comments on § 3–713 of the Uniform Probate Code, "If a personal representative violates the duty of self-dealing described by this section, a voidable title to assets sold results." The statute makes a sale by a personal representative of estate assets voidable if made to a spouse. The statute does not include other family members but we do not believe that the statute therefore condones all sales of estate assets to family members other than the spouse. A sale is also voidable if it is affected by a substantial conflict of interest on the part of the personal representative.

▮ Jack sold the land to his son, Jay. Prior to the sale both Jack and Jay were farming. Jack was farming his own land and Jay was renting the land he eventually bought. During this time Jack and Jay traded equipment and services and Jay lived at home with Jack. Jack lent Jay approximately one-half of the purchase price of the land. This constituted interim financing necessary because the FmHA loan had not been disbursed to Jay. Jack testified at trial that he would not have lent the money to assist anyone else in buying

the land. He also testified that he would have lent Jay the money to purchase land regardless of who was selling or where it was located. Jay also received a loan from a bank for the balance of the purchase price. The bank recorded a mortgage against the land. Although Jack testified that he received a promissory note from Jay and that he charged Jay interest he did not record a mortgage against the land. These circumstances lead us to agree with the trial court that this transaction was affected by a substantial conflict of interest on the part of Jack, the personal representative. We do not believe that this conclusion is contrary to Section 30.1–18–13, N.D.C.C. A sale by a personal representative of estate property to his spouse is voidable. The statute does not make the sale voidable per se when the sale is to other family members. Something additional must exist before the sale is voidable. Here, the facts recited above supply the additional elements which render the sale voidable and support the application of the statute. From our review of the record we determine that the findings made by the trial court are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

▮ The third issue is whether or not a sale by the personal representative to his son of property of the estate is a breach of the trust imposed by Section 30.1–18–11, N.D.C.C. (§ 3–711, Uniform Probate Code):

"Until termination of his appointment, a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court."

According to Section 30.1–18–11, a personal representative is a trustee of the estate for the benefit of creditors and heirs. As a trustee the personal representative is governed by Chapter 59–01, N.D.C.C., in addition to the provisions of Title 30.1, N.D. C.C., the Uniform Probate Code. Section 59–01–11, N.D.C.C., provides:

"Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision and without the use of any influence on the part of the trustee, permits him to do so;

"2. When the beneficiary, not having power to contract, the district court upon the like information of the facts, grants the like permission; or

"3. When some of the beneficiaries having capacity to contract and some not having it, the former grant permission for themselves and the district court for the latter in the manner above prescribed."

The general rule in Section 59–01–11 is that a trustee may not take part in any transaction in which he has an interest adverse to an interest of his beneficiary. We decided *supra* that Jack did take part in a transaction (the sale of the land to Jay) in which he had a substantial conflict of interest. Section 59–01–15, N.D.C.C., makes a violation of Section 59–01–11 a fraud against the beneficiary of the trust. Section 30.1–18–03, N.D.C.C. (§ 3–703, Uniform Probate Code), provides: "A personal representative is a fiduciary who shall observe the standards of care applicable to trustees as described by section 30.1–34–02. . . ." Therefore, we agree with the trial court that the sale by Jack to Jay was a fraud against the heirs and a breach of Jack's fiduciary duty and hence a violation of the trust imposed by Section 30.1–18–11.

Jack's own actions have placed him in this position. He sent letters to the heirs outlining four alternatives for disposition of the land. The first was distribution of the land to the heirs. This contemplated conveying an undivided fractional interest in the entire 727 acres. Jack discouraged this alternative as "somewhat cumbersome due to the great distance between the heirs." The second alternative was to put the land "up for bids, advertised in the paper, and sold to the highest bidder." The third alternative was to sell the land to Jack's son, Jay. The fourth alternative was to partition the land into tracts with each heir receiving an amount proportional to his interest in the estate. Jack commented that this alternative would be unworkable because there are fifteen heirs who have from a one-eighth to a one-forty-eighth interest. Jack also requested comments: "It may also be that one of you would have a different suggestion than those expressed above." Jack also stated that he "would also like to see some sort of common consensus." Fred, and enough other heirs to constitute 50 percent of the interests in the estate, responded suggesting a sale of one-half of the land to Fred's son and one-half of the land to Jack's son. Jack, however, without notice to any of the heirs, sold the land to Jay.

Jack could have sought court approval of the sale. Although Section 30.1–18–11 allows the personal representative to exercise his power over title to property of the estate without notice, hearing, or order of a court, Jack knew from the responses to his letter that heirs who represented at least one-half of the interests in the estate preferred an alternative not mentioned in the letter. Section 30.1–18–13 does not just allow a sale to be voided when the transaction is "affected by a substantial conflict of interest on the part of the personal representative, . . ." It also provides that such a transaction is not voidable if it has been approved "by the court after notice to interested persons."[1] After learning that

---

1. Section 30.1–18–04, N.D.C.C. (§ 3–704, Uniform Probate Code), also permits a personal representative to "invoke the jurisdiction of the court, in proceedings authorized by this title, to resolve questions concerning the estate or its administration."

Our decision today does not preclude future use of this section or others which permit judicial review of the actions of a personal representative.

there was some disagreement or at least difference of opinion among the heirs, Jack could have sought court approval of the sale. At that time the dissenting heirs would have had an opportunity to express their dissatisfaction with the alternatives Jack presented. Even though Jack knew of the alternative proposed by the heirs who represented 50 percent of the interests in the estate, he chose to not seek court approval nor provide the heirs with notice of his intention to sell the land to Jay.

This result does not contravene the intention of the Uniform Probate Code, which seeks to reduce the role of the court in the administration of estates. The actions of personal representatives are not limited by this result. They need not exercise their powers hesitantly nor seek court approval for every transaction unless, as here, they may have a substantial conflict of interest in the transaction, the transaction would breach their fiduciary duty to the heirs, or they proceed with the transaction in the face of dissenting heirs.

The judgment of the district court voiding the deed to Jay and the mortgage to FmHA is affirmed, but the case is remanded for modification of the judgment to provide that the estate pay to FmHA the amount outstanding on the mortgage out of the sum Jay paid for the land and pay the remainder to Jay.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

PAULSON, J., disqualified.