Del K. ERDMANN, Plaintiff
and Appellee,

v.

Delaine R. THOMAS, Defendant
and Appellant.

Civ. No. 880341.

Supreme Court of North Dakota.

Aug. 28, 1989.

Lee Hagen Law Office, Ltd., Fargo, for plaintiff and appellee; argued by Leland F. Hagen.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellant; argued by Carlton J. Hunke.

ERICKSTAD, Chief Justice.

Delaine R. Thomas appeals from a judgment entered on a jury verdict awarding Del K. Erdmann $80,631.54 for damages incurred as the result of an automobile accident, and from an order denying her post-trial motion. We affirm.

On February 7, 1987, Erdmann was a passenger in a vehicle which, while stopped at a red light, was struck from behind by a vehicle driven by Thomas. Immediately after the accident, Erdmann was taken by ambulance to the emergency room of a Fargo hospital, was examined by a doctor, and was released. During the next several months, Erdmann sought treatment for low back and leg pain from several physicians and other health care specialists.

Erdmann subsequently brought this action against Thomas seeking damages for a ruptured disc allegedly caused by the accident. Thomas admitted liability, but denied that Erdmann sustained a "serious injury" caused by the accident, a threshold requirement for seeking noneconomic damages under §§ 26.1–41–01(21) and 26.1–41–08(1)(a), N.D.C.C., of the North Dakota Auto Accident Reparations Act (commonly known as the No–Fault Act). The jury returned a special verdict, finding that Erdmann sustained a "serious injury" as a proximate result of the accident, and awarded him $85,000 in damages. After subtracting the no-fault benefits paid to Erdmann, the trial court entered judgment in the amount of $80,631.54. The court also denied Thomas' post-trial motion for judgment notwithstanding the verdict, or in

the alternative, for a new trial. Thomas appealed from the judgment and the order denying her post-trial motion.

■ Under § 26.1–41–08(1)(a), N.D.C.C.,[1] of the No–Fault Act, Erdmann was not entitled to recover for noneconomic loss unless his injury qualified as a "serious injury." A "serious injury" is defined in pertinent part as "an accidental bodily injury which results in death, dismemberment, serious and permanent disfigurement or disability beyond sixty days, or medical expenses in excess of two thousand five hundred dollars." § 26.1–41–01(21), N.D.C.C. "Medical expenses" are defined in pertinent part as "reasonable charges incurred for necessary medical, surgical, x-ray, dental, prosthetic, ambulance, hospital, or professional nursing services...." Section 26.1–41–01(9), N.D.C.C. The plaintiff has the burden of alleging and establishing at trial that the no-fault threshold requirement has been met. *Calavera v. Vix*, 356 N.W.2d 901, 902 (N.D.1984).

Erdmann sought to meet the threshold requirement by offering medical bills totaling $3,642.57 he incurred after the February 1987 accident.[2] Thomas' major assertion on appeal is that the trial court committed reversible error by admitting·the medical bills into evidence without proper foundation. Thomas contends that foundation was lacking because no expert medical testimony was offered to show that the

bills were necessary for medical treatment required as a result of the accident.

Foundation testimony is that testimony which identifies the evidence and connects it with the issue in question. *Taylor v. State*, 642 P.2d 1294, 1295 (Wyo.1982). It is axiomatic that a foundation must be laid establishing the competency, materiality, and relevance of all evidence. *Cansler v. Harrington*, 231 Kan. 66, 643 P.2d 110, 113 (1982). *See also* Rule 104, N.D.R.Evid.; *R & D Amusement Corp. v. Christianson*, 392 N.W.2d 385, 386–387 (N.D.1986). Whether "an exhibit should have been excluded on the basis that it lacked adequate foundation is primarily within the sound discretion of the trial court, the exercise of which will not be disturbed on appeal in the absence of a showing that it affected the substantial rights of the parties." *Ned Nastrom Motors, Inc. v. Nastrom–Peterson–Neubauer*, 338 N.W.2d 64, 66 (N.D. 1983).

Although Thomas relies on numerous cases from other jurisdictions for the proposition that medical bills cannot be admitted in evidence unless medical testimony establishes that the bills were necessitated by the accident in question, that rule has not been adopted by this court. In *Munro v. Privratsky*, 209 N.W.2d 745, 753 (N.D. 1973), an action for personal injuries and property damage resulting from a car acci-

---

1. Section 26.1–41–08(1)(a), N.D.C.C., provides:
   "*26.1–41–08. Secured person exemption.*
   "1. In any action against a secured person to recover damages because of accidental bodily injury arising out of the ownership or operation of a secured motor vehicle in this state, the secured person is exempt from liability to pay damages for:
   "a. Noneconomic loss unless the injury is a serious injury."
   A "secured person" is defined as "the owner, operator, or occupant of a secured motor vehicle, and any other person legally responsible for the acts or omissions of the owner, operator, or occupant." Section 26.1–41–01(20), N.D.C.C.
   "Noneconomic loss" is defined as "pain, suffering, inconvenience, and other nonpecuniary damage recoverable under the tort law of this state." Section 26.1–41–01(11), N.D.C.C.

2. Erdmann also presented evidence in an attempt to prove that he was disabled beyond 60 days, an alternate means of meeting the threshold requirement under § 26.1–41–01(21), N.D.

C.C. The special verdict form, submitted to the jury without objection from Thomas and returned with an affirmative answer, states in part: "Did the Plaintiff Del Erdmann sustain a 'serious injury' as defined by the instruction given to you as a proximate result of the accident? Answer 'Yes' or 'No.'" The trial court's instructions define "serious injury" as "an accidental bodily injury which results in death, dismemberment, serious and permanent disfigurement or disability beyond 60 days, or medical expenses proximately caused by the accicent in excess of $2,500."

Thomas has not challenged on appeal the sufficiency of the evidence to show that Erdmann was disabled beyond 60 days. In view of our disposition of this appeal, it is unnecessary to address Erdmann's assertion that Thomas waived her right to raise the issue on the admission of the medical bills by failing to object to the special verdict form.

dent, this court expressly rejected the argument that foundation was lacking for admission of a plaintiff's pharmacy bill for medication absent testimony from the plaintiff's doctor. We concluded that the plaintiff's testimony "that the pharmacy bill was for medicine received from the pharmacy which was prescribed by his doctor for the injuries he received as a result of the collision" was sufficient foundation evidence. *Munro v. Privratsky, supra.*

Likewise, in *Klein v. Harper*, 186 N.W.2d 426, 431–432 (N.D.1971), another negligence action for injuries sustained as the result of a car accident, this court held that there was sufficient foundation to admit into evidence the plaintiff's medical bills without supporting medical testimony. The defendant contended that foundation was lacking for the admission of doctor bills, two hospital bills, and 14 receipts for the purchase of drugs because the plaintiff did not introduce "evidence to show that the treatment indicated was necessitated by the collision, ... and that there is no showing of what treatment was given or for what condition." The plaintiff had identified these items, testified as to the injury he suffered to his low back and stomach resulting from the collision, and testified as to his numerous visits with doctors, chiropractors, and specialists for treatment of the injuries. We concluded that the plaintiff's testimony "clearly connects the requirement for the medical services with the alleged tortious conduct of [the defendant] as a proximate cause. Thus there is evidence that the medical services were rendered because of the injury of which he complains and that the services were necessary; ..." *Klein v. Harper, supra.*

*Munro v. Privratsky* and *Klein v. Harper* clearly show that, in this jurisdiction, expert medical testimony is not required to lay the foundation for the admission of medical bills or expenses into evidence. Thomas asserts, however, that the Legislature's enactment of the No–Fault Act has altered this rule, at least with respect to lawsuits subject to the provisions of the Act, because § 26.1–41–01(9) specifically requires proof that the medical expenses were "necessary" as a result of the accident. She also relies on this court's decision in *Calavera v. Vix, supra*, 356 N.W.2d at 902, in which we held that, under the $1,000 medical expense threshold requirement of former Chapter 26–41, N.D.C.C.,

> "a tort action filed within the six-year statute of limitations is not barred by the $1,000 medical expense threshold under Chapter 26–41, N.D.C.C., if the plaintiff can, in good faith, allege and establish at trial that his total medical expenses will exceed $1,000, including *those medical expenses incurred within the limitations period and those which, with reasonable medical certainty, will be incurred in the future. However, mere speculation regarding medical services required will not be sufficient.*" [Emphasis added.]

Thomas asserts that our statement in *Calavera v. Vix* leads to the conclusion that a plaintiff must prove not only that future medical expenses, but also that past medical expenses, were necessarily incurred as a result of the accident "to a reasonable degree of medical certainty." We disagree.

We have consistently held that, in order for a plaintiff to recover for future medical services, there must be "substantial evidence to establish with reasonable medical certainty that such future medical services are necessary." *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 842 (N.D.1980). This comports with the general rule that all future damages must be proved with "reasonable certainty." *Olmstead v. Miller*, 383 N.W.2d 817, 822 (N.D. 1986). Absent from a determination of whether past, in contrast with future, medical expenses were necessarily incurred as the result of an accident is the speculative nature of deciding whether the plaintiff will ever incur future medical expenses, regardless of their causal origin. We decline to impose the "reasonable degree of medical certainty" standard to medical expenses that have already been incurred.

We are not persuaded that the Legislature, by its use of the term "necessary" in the section defining "medical expenses,"

intended that expert medical testimony be required to establish that medical expenses were necessitated by an accident. The No–Fault Act does not specify any method for determining whether an injured party has attained the threshold requirement so that the party may sue for noneconomic loss. *See* T. Smith, *"North Dakota Auto Accident Reparations Act"—North Dakota's No–Fault Insurance Law,* 52 N.D.L.Rev. 147, 157 (1975). We will not assume that the Legislature, in enacting the no-fault statute, intended to apply a rule other than that set forth in *Munro v. Privratsky* and *Klein v. Harper* when it has remained silent on the subject.

In this case, Erdmann testified that on the evening of the accident he was examined by Dr. Van Valkenburg at the Dakota Hospital emergency room. He further testified that because of the pain in his lower back and leg, he sought treatment on February 9 from Dr. Mahoney, a surgeon at Dakota Clinic who prescribed medications and referred him to Dr. Bernhoft, an orthopedic surgeon. Erdmann testified about the treatment Dr. Bernhoft ordered, including therapy at PT–TO Associates, a CT scan, a TENS Unit, and cortisone injections. Erdmann continued treatment with Dr. Bernhoft through March 1987. When he "didn't seem to be getting anyplace," Erdmann sought a second opinion from Dr. March, an internal medicine specialist at Fargo Clinic. Erdmann testified that the pain continued and he then sought treatment from Dr. Habiger, a neurologist at the Neuroscience Clinic, who prescribed therapy and exercises for him. In January 1988, Erdmann sought treatment for the back pain from Dr. Ferguson, another orthopedic surgeon who recommended that he undergo surgery. Erdmann testified that the medical bills at issue were incurred by him after the accident.

Erdmann's medical records were also admitted into evidence. Those records include various references to the accident and his problems with his lower back and leg. Although there is evidence in the record to suggest that Erdmann may have had a disc problem prior to the accident, Dr. Ferguson testified that the accident was a "major" or "strong contributing factor" to the rupture of Erdmann's disc. *See Priel v. R.E.D., Inc.,* 392 N.W.2d 65, 69 (N.D.1986) [A tortfeasor takes his victim as he finds him].

We conclude that an adequate foundation existed for admission of Erdmann's medical bills and that the trial court did not abuse its discretion in allowing the bills into evidence.

■ The bills having been properly admitted in evidence, the question whether the medical expenses were necessitated by the accident became one for the jury. *See Calavera v. Vix, supra; Cansler v. Harrington, supra.* Viewing the evidence in the light most favorable to the verdict, we conclude the jury's finding that the threshold requirement had been met is supported by substantial evidence.

Thomas also asserts that the judgment should be vacated because Erdmann failed to join an indispensable party or plead the reasons for nonjoinder as required by Rule 19, N.D.R.Civ.P.[3]

---

3. Rule 19, N.D.R.Civ.P., provides:

"*(a) Persons to Be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"*(b) Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1) or (a)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent

After the notice of appeal was filed in this case, Erdmann brought a lawsuit against Randy S. Thomas, the husband of Delaine Thomas. Erdmann asserted that Randy was liable for Delaine's negligence under the family car doctrine. *See Herman v. Magnuson,* 277 N.W.2d 445, 455–461 (N.D.1979). According to Erdmann, there was no indication that the vehicle involved was a family automobile until after judgment was entered in this case when he took Delaine's deposition in aid of execution of the judgment.

The purpose of the compulsory joinder rule is to protect an absent party from prejudice, to protect parties from harassment by successive suits, and to protect the courts from being imposed upon by multiple litigation. *Cudworth v. Cudworth,* 312 N.W.2d 331, 333 (N.D.1981). Although the failure to join an indispensable party may be raised for the first time on appeal, "[o]nce the trial has been concluded, the pragmatic considerations in Rule 19 weigh heavily in favor of preserving the judgment of the trial court ... and against dismissal unless there has been real prejudice to those not before the court." *Cudworth v. Cudworth, supra,* 312 N.W.2d at 334. Dismissal of an action for nonjoinder of a party is an extreme remedy which should only be granted where a party is truly "indispensable." *Kouba v. Great Plains Pelleting, Inc.,* 372 N.W.2d 884, 887 (N.D. 1985).

Generally, a plaintiff may sue one or more joint tortfeasors without joining the others and the omitted wrongdoers are considered neither indispensable nor necessary parties under Rule 19. *See Wosepka v. Dukart,* 160 N.W.2d 217, 219 (N.D.1968); *Fisher v. Mon Dak Truck Lines, Inc.,* 150 N.W.2d 711, 713–714 (N.D.1967); 7 Wright,

Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1623, at p. 342 (1986); 3A Moore's Federal Practice ¶ 19.11, at p. 19–216 (2d ed. 1989). Although the family car doctrine is based on agency principles and imposes liability upon the "head of the family" under the doctrine of respondeat superior, [*see Herman v. Magnuson, supra,* 277 N.W.2d at 459–460], this court has treated principals and agents as joint tortfeasors, even when the liability of the principal rests upon the doctrine of respondeat superior. *Royer v. Rasmussen,* 34 N.D. 428, 158 N.W. 988, 989–990 (1916); *see also Edwards v. Great Northern Ry. Co.,* 42 N.D. 154, 171 N.W. 873, 878 (1919). It is generally unnecessary to join principal and agent as defendants in tort actions where the "principal's only responsibility is derivative." 53 Am.Jur.2d *Master and Servant,* § 453, at p. 475 (1970); *see also* 7 Wright, Miller & Kane, *supra,* at p. 345; Annot., *Right to bring separate actions against master and servant, or principal and agent, to recover for negligence of servant or agent, where master's or principal's only responsibility is derivative,* 135 A.L.R. 271 (1941 and Supps.).

■ While Randy Thomas may have been, in hindsight, a proper party under Rule 20(a), N.D.R.Civ.P., we cannot say that the circumstances are such that he was an indispensable party under Rule 19 and that his absence from this litigation requires that the judgment be vacated. In *Cudworth v. Cudworth, supra,* we said that the four interests embodied in Rule 19(b) must be considered in determining whether a person is an indispensable party and whether in his absence it would be preferable to dismiss the action rather than retain it. Those interests are: the plaintiff's interest in preserving his judgment;

person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have

an adequate remedy if the action is dismissed for nonjoinder.

"(c) *Pleading Reasons for Nonjoinder.* A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1) or (a)(2) hereof who are not joined, and the reasons why they are not joined.

"(d) *Exceptions of Class Actions.* This rule is subject to the provisions of Rule 23."

the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability shared with others; the interest of the courts and the public in the complete, consistent, and efficient settlement of controversies; and the absent party's interest in the extent to which the judgment may impair or impede his ability to protect his stake in the subject matter of the suit. *Cudworth v. Cudworth, supra.*

Erdmann's interest in the approximately $80,000 judgment is, of course, substantial, and we have no reason to disbelieve his contention that facts allegedly implicating Randy Thomas under the family' car doctrine were not discovered until after judgment was entered. Erdmann's "interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage" of the proceedings. *Provident Tradesmens B. & T. Co. v. Patterson,* 390 U.S. 102, 112, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968). Delaine Thomas' appropriate interests are difficult to identify. She is not a defendant in Erdmann's action against Randy Thomas, and therefore her interest in avoiding multiple litigation is nonexistent. Delaine has not alleged the possibility of inconsistent relief or that she has been improperly given sole responsibility for a liability that should be shared with Randy. Indeed, it appears that Delaine's only concern with Randy's absence as a party in this case "is to obtain a windfall escape from [her] defeat at trial." *Provident Tradesmens B. & T. Co. v. Patterson, supra.* At this point in the proceedings, the interest of the courts and the public in the complete, consistent, and efficient settlement of controversies is outweighed by "the fact that the time and expense of a trial have already been spent." *Provident Tradesmens B. & T. Co. v. Patterson, supra.*

Moreover, we cannot say that Randy's ability to protect his stake in the subject matter of the lawsuit is substantially impaired by this judgment. The absent party's interest does not include a mere consequential, remote, or conjectural possibility of being in some manner affected by the judgment. *See generally Cudworth v. Cudworth, supra.* We are not here concerned with a statute that automatically dictates derivative responsibility irrespective of a finding based upon agency principles. *Compare Caldararo v. Au,* 570 F.Supp. 39 (S.D.N.Y.1983); *Codagnone v. Perrin,* 351 F.Supp. 1126 (D.R.I.1972). Rather, Randy Thomas' ability to defend himself against liability based on the totality of the circumstances nature of the family car doctrine is not impaired by this judgment. We conclude that, under the circumstances, Randy Thomas was not an indispensable party in this case. *See O'Shatz v. Bailey,* 220 F.Supp. 444, 446–447 (D.Md. 1963); *Munro v. Doherr,* 156 F.Supp. 723, 724 (D.Mass.1957); *Melichar v. Frank,* 78 S.D. 58, 98 N.W.2d 345, 347 (1959).

Accordingly, the judgment is affirmed.

GIERKE, MESCHKE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.