# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6064ND

_____

| | | |
|---|---|---|
| In re: William A. Klesalek, | * | |
| d/b/a Klesalek Excavating | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Robert Klesalek, successor personal | * | Appeal from the United States |
| representative of the Estate of | * | Bankruptcy Court for the |
| Flora Klesalek, | * | District of North Dakota |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| Darrell Suchy, Connie Thompson, | * | |
| Richard Seeman, | * | |
| | * | |
| Intervenor Plaintiffs-Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| William A. Klesalek, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: January 4, 2006
Filed: January 6, 2006

_____

Before KRESSEL, Chief Judge, FEDERMAN and MAHONEY , Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

This is an appeal from an Order of the United States Bankruptcy Court for the District of North Dakota issued on October 19, 2004, in which the court ordered debtor William Klesalek to return two parcels of real estate to the estate of Flora Klesalek for distribution to her heirs. Such Order did not require the estate to compensate debtor for funds he had paid Flora to purchase such real estate. For that reason, we reverse and remand.

## FACTUAL BACKGROUND

On April 29, 1996, Flora Klesalek executed her last will and testament naming Darrell Suchy, Connie Suchy (now Connie Thompson), and Richard Seeman, who were her niece and nephews, as beneficiaries to receive her farmland, consisting of 1127 acres, and 1/4 interest in a parcel of river bottom property ("the real estate"). Connie, who was helping care for Flora at the time, was named as personal representative under the will. About that same time, Connie was also named as Flora's attorney-in-fact pursuant to a durable power of attorney. Flora paid Connie $1,050 per month to act as her attorney-in-fact and caregiver.

In October of 1997, Flora fell and broke her hip and, on October 23, 1997, she was admitted to the Prairie View Nursing Home in Underwood, North Dakota. At that point, Connie became unable or unwilling to continue caring for Flora. On November 6, 1997, Flora named William Kleselak, another nephew, as her attorney-in-fact, replacing Connie. Flora offered to pay William $1,050 per month to assume the responsibility. On November 27, 1997, Flora also named William as her personal representative under the will, again replacing Connie. From the time Flora entered the nursing home, William assisted Flora with the management of her assets and payment of her bills, and visited her regularly.

On December 24, 1997, Flora sold the farmland to William for $163,400, pursuant to a contract for deed. William made seven payments to Flora between December 1997 and June 1998 for a total of $165,413, including interest. William admitted borrowing $15,000 from Flora's account to make one of the payments, but William claims he repaid $14,000 of that amount. On June 12, 1998, when all of the payments had been made under the contract for deed, Flora signed a general warranty deed conveying the land to William. In addition, on December 23, 1998, Flora sold William her 1/4 interest in the river bottom property, for $3,000.

As attorney-in-fact, William was in charge of all of Flora's income and expenses and was a signatory on Flora's accounts, including an American Express account. He was also named as a beneficiary on that account. On February 2, 1999, William withdrew $38,600 from the American Express account to pay Flora's taxes totaling $17,627, but he could not account for the remaining $20,973. Pursuant to an agreement with Flora, he also wrote checks for fence and well improvements made to the farmland, in the total amount of $12,429.89. In addition, at Flora's direction, William issued checks from Flora's account to William's two sons totaling $23,000 and $10,000, respectively, for their college education. As payment for the salary and out-of-pocket expenses Flora agreed to pay him for acting as her attorney-in-fact, William kept Flora's social security checks, in the amount of $675 per month, and wrote himself a check on Flora's bank account for $500 each month. William received payments of $31,460, plus $7,458 from social security checks, totaling $38,918, for the 33 months he was her attorney-in-fact. At the time of Flora's death, the American Express account had a balance of approximately $90,000, which included some of the funds William paid to Flora for the farmland and river bottom properties.

On July 18, 2000, Flora died in the nursing home at the age of 106. Darrell Suchy, Richard Seeman, and Connie Thompson, as beneficiaries under Flora's will, filed an action in the probate court seeking to have William removed as the personal

representative under the will. The probate court granted that motion and issued letters testamentary to Robert Klesalek as the successor personal representative of Flora's estate. On June 27, 2002, Robert Klesalek, in his capacity as successor personal representative of Flora's estate, brought suit in state court against William, alleging he unlawfully acquired Flora's property while serving as her attorney-in-fact. Darrell, Richard, and Connie intervened in that action. In February of 2003, an appraiser appraised the farmland at $367,869 and the river bottom land at $104,715. On April 7, 2003, prior to trial in the state court action, William filed a Chapter 13 bankruptcy petition. Robert filed an adversary action in William's bankruptcy case, and Darrell, Richard, and Connie again intervened.[1] They requested the bankruptcy court to, among other things, order William to return title to the two parcels of real estate and other funds he received to Flora's estate because, they alleged, he obtained title to those properties and the other monies through undue influence. As to the real estate, in addition to its return, they asked for separate relief consisting of an accounting for all rents, profits, and income received by William from such property while he held title to it.

The Plaintiffs conceded that Flora was mentally competent through all of the transactions. Therefore, they attacked the validity of the transactions between Flora and William on the ground that William had a relationship of personal confidence with Flora which gives rise to a presumption of undue influence under North Dakota law. Following a two-day trial, the bankruptcy court held that a confidential relationship existed between Flora and William, thereby giving rise to the presumption of undue influence. The bankruptcy court further found that, as to the transfers of the farmland and river bottom properties, William failed to rebut the presumption of undue influence and that, under North Dakota law, the transfers of the real estate constituted a fraud against Flora's estate. The bankruptcy court also found that William was overpaid for his services in acting as Flora's attorney-in-fact in the

---

[1] Robert, Darrell, Richard, and Connie are collectively referred to as the "Plaintiffs."

amount of $4,268. However, as to the other transactions, and as to William's being made the beneficiary of the American Express account, the bankruptcy court specifically held that William successfully rebutted the presumption of undue influence. Thus, the bankruptcy court ordered William to return title to the real estate to Flora's estate for distribution to her heirs and entered judgment against William in the amount of $4,268 for the overpayment of salary. William appealed the bankruptcy court's Order.[2]

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[3] We review the legal conclusions of the bankruptcy court *de novo.*[4]

## DISCUSSION

William does not argue that the bankruptcy court erred in finding that he had a confidential relationship with Flora, or in finding that he failed to rebut the

---

[2]In their brief Plaintiffs attempted to "cross-appeal," contending that the court should have also awarded them an accounting for the rents, profits, and other income William received while owning the property. On September 15, 2005, we dismissed the purported cross-appeal, as untimely and procedurally defective.

[3]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[4]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

presumption of undue influence as to the transfers of the parcels of real estate, or in finding that he was required to return title to the real estate to Flora's estate. He also does not appeal from the judgment entered against him for the overpayment of salary. Rather, William asserts that the bankruptcy court erred in failing to order that the money he paid to Flora to purchase that real estate be repaid to him.

In determining that the Debtor failed to overcome the presumption of undue influence, the bankruptcy court relied on various provisions of Chapter 59-01 of the North Dakota Century Code. Although the bankruptcy court's application of those provisions is not at issue here, a summary of the relevant statutes is helpful in determining whether the court erred in fashioning its remedy. Specifically, section 59-01-08 provides, in relevant part, that, "[e]veryone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter."[5] Finding a confidential relationship under section 59-01-08 triggers a presumption of undue influence under section 59-01-16.[6] Under that section, all transactions between the trustee and the trustee's beneficiary, in which the trustee gains an advantage, are presumed to have been made without sufficient consideration by the trustee's beneficiary and under undue influence.[7] Once this presumption has been established, the trustee bears the burden of rebutting the presumption.[8] Further, section 59-01-11 provides:

> Neither a trustee nor any of the trustee's agents may take part in any
> transaction concerning the trust in which the trustee or anyone for whom

---

[5] N.D. Cent. Code § 59-01-08.

[6] N.D. Cent. Code § 59-01-16; *see also Gelking v. Boveff (In re Dinnetz)*, 532 N.W.2d 672, 674 (N.D. 1995).

[7] N.D. Cent. Code § 59-01-16.

[8] *In re Dinnetz*, 532 N.W.2d at 675.

the trustee acts as agent has an interest, present or contingent, adverse to that of the trust's beneficiary, except as follows:

> 1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect the beneficiary's own decision and without the use of any influence on the part of the trustee, permits the trustee to do so.[9]

Section 59-01-15, in turn, makes a violation of section 59-01-11 a fraud against the beneficiary of the trust.[10]

Having found that William was in a confidential relationship with Flora and that he failed to rebut the presumption of undue influence as to the transfers of real estate, the question here is what is the proper remedy. No one disputes that this is an action in equity and that, therefore, the remedy should be grounded in equity.

The bankruptcy court ordered William to return the real estate to Flora's estate, but did not order the estate to repay the monies he had paid for such real property. North Dakota recognizes that if a contract is rescinded due to fraud or undue influence, "[i]t is a fundamental principle of equity that parties must be restored to their pre-contractual position" so far as is equitable and reasonably possible.[11]

---

[9] N.D. Cent. Code § 59-01-11(1).

[10] N.D. Cent. Code § 59-01-15; *see also Cudworth v. Cudworth,* 312 N.W.2d 331, 336 (N.D. 1981).

[11] *Barker v. Ness*, 587 N.W.2d 183, 187 (N.D. 1998).

For example, in *Cudworth v. Cudworth*,[12] the defendant had been appointed personal representative of his brother's intestate estate, the major asset of which was a tract of land. The personal representative sold the land to his own son, without offering it for sale to any of the other heirs or placing it on the open market. In order to purchase the land from the estate, the son obtained a loan for part of the purchase price and granted a mortgage against the property to FmHA. One of the other beneficiaries later sued the personal representative to void the sale and the mortgage that had been placed against the property. The trial court held, among other things, that the personal representative took part in a transaction (the sale of the land to his son) in which he had a substantial conflict of interest and that the transaction was a fraud against the heirs under sections 59-01-11 and 59-01-15.[13] The North Dakota Supreme Court affirmed the judgment of the trial court voiding the deed to the son and voiding the FmHA mortgage, but remanded the case for modification of the judgment to provide that the estate pay to FmHA the amount outstanding on the mortgage, and pay the remainder of the purchase price to the son.[14] Thus, the North Dakota Supreme Court ordered the trial court to put the parties back into their respective pre-contract positions by requiring the estate to repay the son the price he had paid for the property.

Similarly, in *Thomas v. Thomas (In re Thomas),*[15] the North Dakota Supreme Court considered a buy-sell agreement involving an operating business and a parcel of land. The court held that the surviving partner had exercised undue influence, within the meaning of Chapter 59-01, in the purchase of the decreased partner's share. Therefore, the court held that the deceased partner's estate was entitled to recover the

---

[12] 312 N.W.2d 331 (N.D. 1981).

[13] *Id*. at 336.

[14] *Id*. at 337.

[15] 532 N.W.2d 676 (N.D. 1995).

value of its interest in the assets as of the date of death. Significantly, however, the court also held that the surviving partner was entitled to an offset for the amounts he had actually paid to the estate under the buy-sell agreement. Once again, the Supreme Court ordered that the parties in effect be restored to their pre-contractual positions.

Thus, North Dakota law requires that if a transaction is voided for undue influence, the court is to take such steps as are needed to return the parties to their original position. As to the real estate purchased by William, the bankruptcy court voided the transaction for undue influence, but erred in failing to return William to his original position.

As to the appropriate remedy, Plaintiffs assert that if William wished to be repaid the amounts paid by him, upon the voiding of the transaction, then he should have specifically asked for that relief below. But, as shown, to the extent Plaintiffs sought to void the transaction for undue influence, North Dakota law requires that the court put the parties back in their pre-contract positions, if it is possible to do so. As to the payments made by William, the court had before it evidence from which to make that determination, and therefore was obligated to apply North Dakota law to that evidence.

Plaintiffs also argue that, to put the parties back in their pre-contractual positions, they should have been awarded the rents, profits, and income received by William after he purchased the property. However, they offered no evidence as to the amount of such rents, profits, and income, so they are not entitled to such relief.

In the alternative, Plaintiffs assert that in awarding William the American Express account, and in validating certain other transactions, the bankruptcy court "struck an equitable compromise that did not call William Klesalek to task on every fiduciary misdeed related to his land purchase but did require him to return the land to proper heirs without further compensation to him other than the American Express

contract balance."[16] As shown, however, the bankruptcy court specifically held that William had rebutted the presumption of undue influence as to the American Express account, and as to all transactions other than those involving real estate. Therefore, Plaintiffs have no basis to argue that the court intended otherwise.

For the reasons stated, William Klesalek is entitled to recover the $165,413 paid by him for the real property, less the $4,268 he was found to have been overpaid by Flora Klesalek, or a total of $161,145. The Order of the bankruptcy court is REVERSED AND REMANDED for entry of an Order awarding such sum.

_____

---

[16] Brief and Cross-Appeal of Appellees, at 12.